## OWEN *et al.* v. CITY OF TULSA *et al.*

### No. 1602.   Opinion Filed September 21, 1910.

#### (111 Pac. 320.)

1. **MUNICIPAL CORPORATIONS—Public Park—Power of City to Sell.** The charter of the city of Tulsa prepared and proposed by a board of freeholders of said city, and later adopted by the qualified electors of said city, pursuant to article 18 of the Constitution and the act of March 22, 1908, (Laws 1907-08, c. 12) vests in said city, under article 2, secs. 1, 7, power to sell a part of a public park, the fee-simple title of which, without limitation, is in the city.

2. **REFORMATION OF INSTRUMENTS—Grounds—Mutual Mistake—Necessity.** In order to state a cause of action authorizing the interference of a court of equity to reform a deed on the ground of mistake, by inserting therein a clause limiting the use of the land conveyed, it must appear that the mistake was mutual and common to both parties to the instrument, and that both had done what neither intended.

(Syllabus by the Court.)

*Error from District Court, Tulsa County; L. M. Poe, Judge.*

Suit by Chauncey A. Owen and others against the City of Tulsa and others. Judgment for defendants, and plaintiffs bring error. Affirmed.

*Kellough & Dillard,* for plaintiffs in error.—Citing: *Douglas v. City of Placerville,* 18 Cal. 643; *Knox City v. Thompson,* 19 Mo. App. 523; *Williams v. Davidson,* 43 Tex. 134; *Davenport v. Buffington* (C. C. A.) 97 Fed. 234; *Weeks v. Galveston* (Tex.) 51 S. W. 544; *Ogden v. Bear Lake Co.* (Utah) 52 Pac. 697; *Huron Waterworks v. City of Huron* (S. D.) 62 N. W. 978; *Roberts v. Louisville* (Ky.) 17 S. W. 216; *Fort Wayne v. Railway Co.* (Ind.) 32 Am. St. Rep. 277; *San Francisco v. Itsell* (Cal.) 22 Pac. 74, *Mariwether v. Robt. Garrett & Sons,* 102 U. S. 197.

*Hainer & Martin,* for defendants in error.—Citing: Pomeroy, Eq. Jurisp. § 854; *Diamond v. Providence, etc., Co.,* 5 R. I. 130; *Beach v. Haynes,* 12 Vt. 15; *Clark v. City of Providence,* 15

Atl. 763; *Courd v. Rogers* (Wis.) 36 N. W. 261; 17 A. & E. Encyc. L. (1st Ed.) 417; *Brooklyn Park Com'rs. v. Armstrong*, 45 N. Y. 234; *Seattle, etc., Co. v. Seattle,* 79 Pac. 780.

TURNER, J.   On March 17, 1910, Chauncey A. Owen, for himself, and Chauncey A. Owen and Frank A. Gillespie, as resident taxpayers of the city of Tulsa, for themselves and all other residents of the city of Tulsa similarly situated, plaintiffs in error, plaintiffs below, sued the city of Tulsa, a city of the first class, John O. Mitchell, mayor, and the commissioners of said city, in the district court of Tulsa county.   The amended petition substantially states that said Owen was, on August 18, 1909, the owner of a certain tract of land in said city, containing about twenty-seven acres (describing it) ; that, on said day, he sold and conveyed said land to said city; that the same was bought by the city for a public park pursuant to a vote of city bonds theretofore issued for that purpose; that said property was worth $20,000, but, for the purpose of having a public park·located thereon so as to enhance the value of his adjacent property, he sold said tract to said city for $13,500; that said sale was recommended by the park board and approved by the board of commissioners of said city for the sole purpose aforesaid, all of which was understood by the contracting parties at the time, but that no clause was inserted in the deed limiting the title or use of the land conveyed, for the reason that his attorney informed him that such was unnecessary; that said land was well adapted for park purposes, and for the reasons stated was sold for about two-thirds, of its real value; that immediately thereafter said board of commissioners, by and with the consent and upon the recommendation of said park board, dedicated said land as a public park; that said park board at once began to improve the same as such at public expense, and caused walks and streets to be laid off, shrubbery planted, nurtured and cultivated, a greenhouse erected, and set apart and designated parts of said park for different purposes; that the part which it proposes to sell was designated as a playground for children, all of which said land is being continuously used by the

public as a public park; that said boards are threatening to sell and convey said playground to the Tulsa Vitrified Brick Company, from which to excavate large quantities of earth which will make a dangerous hole for the accumulation of water and the production of sickness, contrary to the purposes for which said land was bought, the money voted, the charter of the city, and the laws of the state.

For a second cause of action, the petition substantially states that the purchase of said property by the city is void for the reason that the charter provides the city may "take, hold and purchase lands as may be needed for corporate purposes of this city," and that that part of the property which it threatens to sell was not purchased or needed for corporate purposes, but was purchased for the purpose of reselling the same to said Tulsa Vitrified Brick Company; that said Owen is the owner of property adjacent to said park, and, therefore, knowing the purpose for which said company sought to buy part of said park property from him, declined to sell; that, well knowing that fact, and for the purpose of defrauding him and aiding the brick company to secure said property, members of said park board conspired with said brick company and induced the city to purchase said property, and afterwards recommended the sale thereof by the city to the brick company; that said park board, while using the city's money arising from the sale of the bonds in making said purchase, was in fact acting as agent for the brick company in securing said land in fraud of his rights, and that said purchase was *ultra vires* and void.

For a third cause of action, plaintiffs say that if they are mistaken in the allegation that the purchase of said land now proposed to be sold to the brick company was *ultra vires,* then they allege, in the alternative, that the same is still necessary for park purposes, and was at the time it was purchased, which necessity still exists; that said land was dedicated as a public park by said board of commissioners by consent and upon the recommendation of said park board, which latter at once began to improve said

property as such; that it employed a superintendent and assistant by the year at public expense to superintend, put in order, and make said park; that said board caused walks and streets to be laid off, shrubbery to be planted, nurtured and cultivated; that it caused a greenhouse to be built and set apart, and designated different parts of the park for different purposes; that the part which said board of commissioners proposes to sell to said brick company was set apart as a playground for children, the whole of which is now being improved by the park board for park purposes, and is being continuously used by the public as a public park; that, under the charter of the city and the laws of the state, said board of commissioners of said city have no right to sell any property acquired for public purposes, so long as the necessity for its use remains, and where, as in this case, the property was purchased with the proceeds of bonds voted by the city for the purpose of buying the land for a park; that said Owen is the owner of property adjacent to said park which will be greatly injured by a sale of said part to said company to be used as stated; that all property of other citizens similarly situated will be likewise so injured; that said Owen and Gillespie, as resident taxpayers of said city, will be greatly injured by a sale of said property, which will deprive them of the use thereof as a public park; that its use as aforesaid by the brick company will leave a large hole within the park lines for the accumulation of excrement and filth of all kinds, detrimental to the health and comfort of the citizens of the city— and tendered $2,468, the cost of the five acres threatened to be conveyed, and prayed:

"First, that the court decree the deed from the said Owen to the city of Tulsa be reformed so that the same would limit the use of said property to park purposes, and that the clause fixing the future use (setting it out) be inserted in said deed. Second, that the court decree that the purchase of the five acres which the city is proposing to sell to the Tulsa Vitrified Brick Company to be *ultra vires* and void. Third, that the court decree that the defendants and their successors be perpetually enjoined from selling any part of said property, so long as same can be reasonably

used for park purposes, and so long as same shall be necessary for park purposes, to the Tulsa Vitrified Brick Company, and to any and all other persons whomsoever."

To this petition defendant demurred on the ground of a "misjoinder" of parties plaintiff, a misjoinder of causes of action, and that it failed to state facts sufficient to constitute a cause of action, which the court sustained, dissolved the temporary restraining order theretofore issued, and plaintiffs, electing to stand on their petition, bring the case here, and assign for error the sustaining of said demurrer. As the court sustained the demurrer generally and as misjoinder of parties is not a ground of demurrer under our statute (*Stiles, Treas:, v. City of Guthrie,* 3 Okla. 26, 41 Pac. 383), we presume the court sustained it on one of the two remaining grounds. Had the court sustained it upon the ground of misjoinder of causes of action, it would have been the duty of the court to so state at the time in order to afford plaintiff's counsel an opportunity to move to be allowed to file separate petitions, each to include such of said causes of action as might have been joined, and had them each docketed, pursuant to section 92 of chapter 66 of the Statutes of Oklahoma of 1903 (Code. Civ. Proc.). *Goldsborough v. Hewitt,* 23 Okla. 66, 99 Pac. 907; *Webster et al. v. Dillon, County Treas.,* 7 Okla. 568, 54 Pac. 894. As the court made no such indication and counsel were therefore afforded no such opportunity, it is but fair to presume that the court sustained the demurrer upon the third ground, which is that the petition fails to state facts sufficient to constitute a cause of action. The demurrer being general, if there is one paragraph in the petition which states a cause of action, the demurrer must be overruled. *Stiles, Treas., v. Guthrie, supra,* and cases cited.

Plaintiffs contend that the petition states facts sufficient to raise the question of whether a suit will lie at the instance of themselves as resident taxpayers of the defendant city to restrain it from selling a portion of its real property owned in fee simple without limitation and dedicated by it to a public use, on the

ground that no express delegation of legislative power existed authorizing it to sell.   Defendants concede, and we think properly, that this issue is fairly raised, but contend that such legislative power is expressly delegated to the city.   Both sides concede the law to be that as to property of a private nature not dedicated to public use the defendant city possesses the implied right to sell unless restrained by the charter, but that the city cannot dispose of its property of a public nature such as the park in question, except in the exercise of legislative authority; or, as stated in 2 Dillon on Municipal Corp. § 575:

"Municipal corporations possess the incidental or implied right to alienate or dispose of the property, real, or personal, of the corporation, of a private nature, unless restrained by charter or statute.   They cannot, of course, dispose of property of a public nature, in violation of the trusts upon which it is held, and they cannot, except under valid legislative authority, dispose of the public squares, streets or commons."

The trial court, in sustaining the demurrer, in effect held such to be the law, and that the city, in attempting to do the act complained of, was in the proper exercise of such power, and could not be enjoined.   Did the city possess this power?   A municipal corporation possesses no powers except those expressly granted or necessarily implied.   In determining whether the defendant city possessed the power in question, any fair reasonable doubt concerning its existence must be construed against the city.   We think no such doubt exists.   Said defendant is a city of the first class, governed by a municipal charter adopted pursuant to section 3, art. 18, Const., which in effect provides that any city containing a certain population may frame a charter for its own government consistent with and subject to the Constitution and laws of the state, by taking certain steps therein prescribed; that, if a majority of the qualified electors of the municipality voting thereon shall ratify the same, it shall be submitted to the Governor for his approval, who shall approve the same if not in conflict with the Constitution and laws of the state, and that, upon approval, it shall become the "organic law" of the city, etc.   Although this

section of the Constitution is self-executing (*State ex rel. v. Scales*, 21 Okla. 683, 97 Pac. 584), and placed upon the charter no limitations except that it be in harmony with and subject to the Constitution and laws of the state, in furtherance of the exercise of said right on March 22, 1908, an act was passed entitled "An act to enable all cities containing a population of more than 2,000 inhabitants to form and adopt a charter for their own government, and to *extend* and define their powers." Laws 1907-08, c. 12. Section 4 of said act (Snyder's Comp Laws Okla. 1909, § 801) provides:

"When a charter for any city of this state shall have been framed, adopted and approved, according to the provisions of this act, and any provisions of such charter shall be in conflict with any law or laws relating to cities of the first class in force at the time of the adoption and approval of such charter, the provisions of such charter shall prevail and be in full force, notwithstanding such conflict, and shall operate as a repeal or suspension of such state law or laws to the extent of such conflict; and such state law or laws shall not thereafter be operative in so far as they are in conflict with such charter; provided, that such charter shall be consistent with and subject to the provisions of the Constitution, and not in conflict with the provisions of the Constitution and laws relating to the exercise of the initiative and referendum, and other general laws of the state not relative to cities of the first class."

Pursuant to this grant of power, the charter in question was prepared and proposed by a board of freeholders elected by the qualified voters of Tulsa and later adopted. Under it the defendant city was granted the right to frame and adopt an "organic law" embracing all rightful subjects of legislation pertaining to a local municipal government or falling within municipal regulation, or, in the language of *Kansas City v. Oil Co.*, 140 Mo. 458, 41 S. W. 943, "to adopt a complete and harmonious system of local municipal government." Said charter is therefore the organic law of the city of Tulsa, and the powers therein granted to it, so far as they are not in conflict with the Constitution and general laws of the state, are the powers vested in the city. Of a similar charter adopted for the city of St. Louis, Brewer, J.,

in *St. Louis v. Western, etc., Co.,* 149 U. S. 465, 13 Sup. Ct. 990, 37 L. Ed. 810, said:

"It does not, like most cities, derive its powers by grant from the Legislature, but it framed its own charter under express authority from the people of the state, given in the Constitution. Sections 20 and 21 of article 9 of the Constitution of 1875 [Ann. St. 1906, pp. 267-269] of the state of Missouri authorized the election of thirteen freeholders to prepare a charter to be submitted to the qualified voters of the city, which, when ratified by them, was to 'become the organic law of the city.' * * * Sections 23 and 25 [pages 271, 272] required the charter and amendments to always be in harmony with and subject to the Constitution and laws of Missouri. * * * In pursuance of these provisions of the Constitution a charter was prepared and adopted, and is therefore the 'organic law' of the city of St. Louis, and the powers granted by it, so far as they are in harmony with the Constitution and laws of the state, and have not been set aside by any act of the General Assembly, are the powers vested in the city. And this charter is an organic act, so defined in the Constitution, and is to be construed as organic acts are construed. The city is in a very just sense an *'imperium in imperio.'* Its powers are self-appointed, and the reserved control existing in the General Assembly does not take away this peculiar feature of its charter."

Of a charter adopted under constitutional provisions and an enabling act of March 10, 1887 (Laws Mo. 1887, p. 42), similar to ours, *supra,* the court, in *State ex rel. v. Field, Judge,* 99 Mo. 352, 12 S. W. 802, after saying that a charter thus adopted is not beyond subsequent legislative influence, said:

"Subject to this superior power of the Legislature, the Constitution accords to any city having the requisite population the right to frame and adopt a charter for its own government, which will supply its peculiar wants. Charters thus adopted will of necessity be more or less at variance, and that they will be unlike, in many respects, is within the contemplation of the Constitution. It is also within the fair contemplation of the Constitution that a charter thus adopted may embrace the entire subject of municipal government, and be a complete and consistent whole. The enabling act of March 10, 1887, is in perfect accord with the spirit of the Constitution, and it discloses a well-defined purpose to clear the legislative field, and pave the way for the adoption of a charter

which will of itself present a complete system of local municipal government. It says the charter thus adopted shall be and constitute the entire organic law of such city. Stronger language could hardly have been selected to express the purpose and intention which we have said is disclosed by this act."

The charter in question (section 1, art. 2) provides:.

"The city of Tulsa, made a body politic and corporate by this charter, shall have perpetual succession, and use a common seal, may sue and be sued, may contract and be contracted with, implead and be impleaded in all courts and places, and in all matters whatever, may take, hold and purchase lands as may be needed for corporate purposes of this city, and may sell any real estate or personal property owned by it."

Section 7, art. 2, provides:

"The ownership, right of control and use of streets, highways, alleys, parks, public places and all other real property of the city of Tulsa, is hereby declared to be inalienable to said city, except by ordinance passed by a vote of the majority of the board of commissioners, as hereinafter provided."

This was an express and unequivocal grant of power from the state to the city to do the act complained of. *Kansas City v. Oil Co.*, 140 Mo. 458, 41 S. W. 943, was an appeal from a judgment of the circuit court of Jackson county in a proceeding instituted and prosecuted to condemn real estate to widen a street pursuant to article 10 of the charter of Kansas City as amended pursuant to the Constitution, authorizing a city having a certain population to frame a charter for its own government, and thereafter amend same, duly accepted by a requisite number of the qualified voters of the city. The proceeding was begun pursuant to said amendment by filing a copy of an ordinance of the city, passed upon the recommendation of the board of park commissioners, designating certain lands for a boulevard, as shown by a map filed by the city engineer, with said commissioners. There was judgment for the city, and the oil company appealed. It was contended that the power of eminent domain assumed and exercised by the city was *ultra vires*. It was contended against the action of the city that said power was not granted to the city by its charter, adopted pur-

suant to the section of the Constitution and the enabling act of March 10, 1887, set forth in *State ex rel. v. Field, supra*. But the court held that such power was inherent in every government, and not conferred · but limited by the Constitution; that it was not pretended such power was inherent in a municipality created by the state, but might be delegated by the state to the city. The court then pointed to section 1, article 1, of the charter of the city, which empowered it, among other things, to "acquire and hold by gift, devise, purchase or by condemnation proceedings, lands and other property for public use, either within or beyond the corporate limits of said city, for waterworks to supply the city with water; for gas works or other means of lighting to supply the city with light; for public parks, cemeteries, penal institutions, sewers, or for any other public use," etc., and to article 7, which, provided in detail the method of procedure for condemning lands "for establishing and opening any public park" or "for establishing, opening, widening, extending or altering any boulevard, street, avenue, alley," etc., and declared the power to condemn lands for such purposes to be plainly conferred by the Constitution and the charter in unequivocal terms, and not as a matter of inference, but a direct grant of the necessary power. And so we say in this case that section 7, *supra*, of the charter which declares the ownership and uses of parks inalienable to the city, except by ordinance passed by a vote of the majority of the board of commissioners, vested the power to sell the park in question, or any part thereof, in the city, and that, as said provision is not contrary to the Constitution or laws of the state, the same must stand.

For the reasons stated, there is nothing in the contention that the powers of those charter cities are enumerated in the act of March 13, 1899 (Laws 1899, c. 8, art. 2, § 1 [an act amendatory of section 2, art. 1, c. 14, St. 1893, entitled, "Cities of the First Class"]); that neither said act nor the Constitution confers upon said cities power to sell any public property of the city, and therefore said provision in the charter which purports to confer upon

the defendant city any greater right to sell any of its property than the right which is an incidental and implied right in all cities to sell its private property is void, or, in other words, *ultra vires,* and the demurrer to this cause of action was properly sustained. But it is contended that the petition states facts sufficient to warrant a reformation of the deed from Owen to the city by inserting a provision limiting the use of the property to a public park on the ground of mistake in omitting said provision from the deed. Not so. It is not alleged that Owen was prevented by the fraud of the city or any one else from inserting said provision in the deed, or that its omission was the result of the mutual mistake of grantor or grantee. The facts alleged show that the grantee had contracted for and intended to buy the fee-simple title to the land just as it did, and that too without limitation. It is clear that no such limitation was intended by the grantor to be inserted in the deed for the reason that his attorney told him it was not necessary. No mistake, therefore, is shown on the part of the grantor, much less on the part of both parties to the deed, and hence that both had done what neither intended. This must appear by proper allegations to withstand a demurrer. *Hope v. Bourland,* 21 Okla. 864, 98 Pac 580. In *Hearne v. Marine Insurance Company,* 20 Wall. 488, 22 L. Ed. 395, the Supreme Court of the United States, speaking through Mr. Justice Swayne, lays down the rule as follows:

"The reformation of written contracts for fraud or mistake is an ordinary head of equity jurisdiction. The rules which govern the exercise of this power are founded in good sense, and are well settled. Where the agreement as reduced to writing omits or contains terms or stipulations contrary to the common intention of the parties, the instrument will be corrected so as to make it conform to their real intent. The parties will be placed as they would have stood, if the mistake had not occurred. Kerr on Fraud & Mistake, 419, 420. The party alleging the mistake must show exactly in what it consists, and the correction that should be made. The evidence must be such as to leave no reasonable doubt upon the mind of the court as to either of these points. *Beaumont v. Bramley,* 1 Turner & Russell, 41-50; *Marquis of Breadalbane v.*

*Marquis of Chandos,* 2 Mylne & Craig, 711; *Fowler v. Fowler,* 4 De Gex & Jones, 255; *Sells v. Sells,* 1 Drewry & Snales, 42; *Loyd v. Cocker,* 19 Beavan, 144. The mistake must be mutual and common to both parties to the instrument. It must appear that both have done what neither intended. *Rooke v. Lord Kinsington,* 2 Kay & Johnson, 753: *Eaton v. Bennett,* 34 Ravan, 196. A mistake on one side may be a ground for rescinding, but not for reforming a contract. *Mortimer v. Shortall,* 2 Drury & Warren, 372; *Sells v. Sells, supra.* Where the minds of the parties have not met, there is no contract, and hence none to be rectified— [citing authorities]."

The petition presenting as it does a case of unilateral mistake, if any, and there being nothing in the remaining assignment of error, the judgment of the trial court sustaining a demurrer to the petition is affirmed.

All the Justices concur.