## CHRISTNER et al. v. McKAY.

No. 9581—Opinion Filed Jan. 27, 1920.

(Syllabus by the Court.)

1. **Reformation of Instruments—Contracts —Mistake—Evidence.**

The law does not authorize the reformation of a written contract on the ground of mutual mistake (i. e., a mistake by each of the parties thereto) unless the proof of such mutual mistake is clear and convincing.

**2. Same—Reformation of Deed.**

Evidence, examined, and held, first, the judgment of the trial court was clearly against the weight of the evidence; second, the evidence is sufficient to sustain the allegation that the deed given by McKay to defendants did not conform to the agreement of the parties, through mutual mistake, justifying its reformation.

Error from Superior Court, Pottawatomie County; Leander G. Pitman, Judge.

Action by Laura I. McKay against G. M. Christner and another. Judgment for plaintiff, and defendants bring error. Reversed.

E. C. Stanard, J. H. Wahl, C. H. Ennis, and M. L. Hankins, for plaintiffs in error.

Goode & Johnson, for defendant in error.

McNEILL, J. Laura I. McKay brought suit against the defendants, G. M. Christner and F. W. Christner, alleging in her petition that on the 14th day of April, 1911, Robert J. McKay was the owner of 80 acres of land situated in Pottawatomie county subject to a mortgage dated April 1, 1908, in the sum of $400, in favor of the Conservative Loan and Abstract Company, due and payable in five years, and on said April 14, 1911, Robert J. McKay executed and conveyed to the Christners an undivided one-half interest in and to said land for the consideration of $1 and other valuable consideration, and the provision in the deed that the Christners assumed and agreed to pay the mortgage of $400. The petition further alleged that plaintiff was the wife of Robert J. McKay and joined in said conveyance; that on the 19th day of November, 1912, Robert J. McKay died and willed all of his property to the plaintiff, and she has succeeded to all of his rights. Plaintiff alleges that the defendants have failed and refused to pay said mortgage, and she asks that the land be partitioned and sold and the mortgage of $400 be charged to defendants' interest in the land, and that she have judgment against them for said amount.

The defendants Christner answered, denying that Robert J. McKay was the owner of said land on the 14th day of April, 1911, but alleging that said McKay was the owner of an undivided one-half interest in said real estate, and that D. N. Crafton was the owner of the other undivided one-half interest, and that the title of the interest of Crafton was held in the name of McKay, for the use and benefit of Crafton. Defendants further allege that on the 14th day of April, 1911, they purchased the one-half interest of said premises from Crafton, the title of which was held in the name of McKay, and that the said Crafton, for the purpose of conveying

his interest in said land to said defendants had Robert J. McKay and wife execute a warranty deed in favor of defendants, and that Crafton delivered the same to defendants; that at the time of said conveyance, the premises were covered by a mortgage securing the principal sum of $400, and that the undivided one-half interest of Crafton and the undivided one-half interest of McKay each were chargeable with one-half of the mortgage debt, and that they purchased the premises from Crafton with the understanding and agreement that they should assume the payment of one-half of said mortgage, being the amount chargeable to Crafton's interest, but the scrivener in preparing said deed, which deed was to be executed by McKay and wife, erroneously inserted in said deed the provision to the effect that the defendants agreed to pay the entire mortgage; and the defendants asked to have said deed reformed to conform to the real intent and agreement of the parties; that the undivided one-half interest of the land of the defendants be impressed with one-half of the mortgage and that plaintiff's one-half interest be impressed with the other half; and asked that said land be partitioned.

Upon the trial of the case to the court, the court found that on April 14, 1911, McKay was the owner of the land in question and conveyed an undivided one-half interest to the defendants, and the defendants agreed to pay all of said mortgage; that on November 19, 1912, McKay died and plaintiff succeeded to all of his rights in the premises; and rendered judgment in favor of plaintiff and against the defendants. From said judgment the defendants have appealed, and for reversal rely upon one assignment of error, to wit: That the finding of facts and judgment of the court are clearly against the weight of the evidence.

The evidence was very short. The evidence produced by plaintiff was a deed executed by D. N. Crafton and wife to Robert J. McKay, dated February 25, 1909, conveying the 80 acres in question to McKay. The consideration mentioned in the deed was $1, and the deed contained the provision that the land was free and clear of any incumbrance. Plaintiff then introduced a deed from R. J. McKay and Laura McKay to the Christners for an undivided one-half interest to the same land, which deed contains the provision that the land was free and clear of any mortgages and liens except a mortgage of $400, which the grantee assumed and agreed to pay. The mortgage on the land was held by the Conservative Loan and Abstract Company, and was dated April 1, 1908, and due in five years. These instru-

ments were the only evidence introduced on behalf of plaintiff.

This 80 acres of land is referred to in the record as the Motsenberger land. The defendants Christner, to support the allegations of their answer to have the deed reformed to speak the truth, produced as a witness Mr. Sage, who testified that he had several conversations with Mr. McKay during his lifetime concerning this land, and that Mr. McKay stated in substance that he and Mr. Crafton owned the land together and that Mr. Crafton had conveyed his interest in the land to the Christner brothers. A portion of his testimony on this question is as follows:

"A. Don't you want that conversation I had with him? Q. I want your testimony limited to your conversation with him concerning the Motsenberger land. A. All right. He asked me at that time if I knew just when the interest was due on the mortgage on the Motsenberger farm, for he wished to pay his half of the interest. Q. What, if anything, did he say in that conversation about the ownership of that land? A. He explained that he and Dan Crafton had owned that farm together, and that the Christner boys had traded for Dan Crafton's portion of the land, and that he wished to pay his half of the interest on the mortgage."

Mr. Christner testified that Dan Crafton was indebted to him and his brother in about the sum of $80; that they had sued Crafton in the justice court, and in making' settlement with Mr. Crafton it was agreed that Mr. Crafton should deed them his half of this 80 acres of land, that defendants should assume one-half of the mortgage indebtedness on the 80 acres. That in addition to the $80 indebtedness, there was a further consideration of $50 in cash which was paid Crafton, and a note that Crafton owed to one of the banks of Shawnee amounting to about $40. Christner testified they had never paid Mr. McKay anything for the land, never had a conversation with him concerning the land, and that the deed was prepared and given to Mr. Crafton to have McKay and wife sign the same, and Crafton returned with the deed executed by Mr. McKay and his wife. That Christner did not notice that the deed contained the provision that he and his brother had agreed to pay all of the mortgage. That the total consideration for the deed was about $170, all of which was paid to Crafton, and the assumption of one-half of the mortgage. Mr. C. M. Cade, who was connected with one of the banks, corroborated the statement of Christner, in regard to the fact that in April, 1911, the Christners had paid the note executed by Crafton to the bank on which there was a balance due on the note of about $40. Mr.

E. K. Krouse was produced as a witness and testified that he was treasurer of the Conservative Loan and Abstract Company, which held the note and mortgage on the land for $400; that on the 28th day of March, 1912, Mr. McKay came in and paid one-half of the interest due on said note, or the sum of $16.00 and McKay instructed witness to charge the other one-half of the interest to the Christner brothers. The witness produced his memorandum or day book showing he had received from Mr. McKay $16 cash, and charged Christner brothers with $16, being one year's interest on said note.

The evidence disclosed that Dan Crafton was in South America some place, his exact whereabouts being unknown. The plaintiff offered no rebuttal, nor did she attempt to impeach any of the testimony offered by the defendants in any way. The question presented is, was the evidence of the Christners sufficient to reform the deed? The rule laid down by this court, in the case of Schafer v. Midland Hotel Co., 41 Okla. 111, 137 Pac. 664, is as follows:

"The law does not authorize the reformation of a written contract on the ground of mutual mistake (i. e., a mistake by each of the parties thereto) unless the proof of such mutual mistake is clear and convincing."

To the same effect is the holding of this court in the following cases: Dockstader v. Gibbs, 34 Okla. 497, 126 Pac. 229; Owen et al. v. City of Tulsa, 27 Okla. 264, 111 Pac. 320; Cleveland v. Rankin, 48 Okla. 99, 149 Pac. 1131; Davidson v. Bailey, 53 Okla. 91, 155 Pac. 511.

The evidence of Christner is undenied that defendants purchased the land from Crafton and that no consideration was paid whatever to McKay. The evidence of Mr. Sage that after the undivided one-half interest had been deeded to the Christners by McKay, McKay stated the land was owned by him and Crafton together, and that Crafton had traded his portion of the land to Christner is also undenied. The evidence is undenied that, almost a year after the date of the deed to the Christners, McKay paid one-half of the interest due on the mortgage and directed the loan company to charge the other one-half to the Christner brothers. The evidence is also undenied that the Christners paid the note of Mr. Crafton to the bank at the time the land was transferred, or about that time. This evidence being undenied, we think the same is sufficient to meet the requirement as to the degree of proof required to reform a written instrument, as the acts and statements of Mr. McKay, as testified to by the two witnesses, are inconsistent with the idea that he was the owner of all of said land, and

that defendants were to assume and agreed to pay all of said mortgage.

This being an equity case, the finding of the trial court being clearly against the weight of the evidence, this court will reverse the case and render the judgment the trial court should have rendered.

For the reasons stated, the judgment of the court is set aside, and judgment rendered reforming the deed to speak the true intent of the parties, and that said deed be corrected to read to "assume one-half of said mortgage," instead of all of the mortgage.

OWEN, C. J., and PITCHFORD, HIGGINS, and BAILEY, JJ., concur.