**GILBERT, Co. Treas., et al. v. FISHER et al.**

No. 15356—Opinion Filed Sept. 9, 1924.

Rehearing Denied March 3, 1925.

(Syllabus.)

1. **Taxation—Excess City Levy—Correction of Tax Rolls—Compliance with Statute.**

Under section 1 of the act of the Legislature of March 17, 1924, found in Session Laws 1923-24, chap. 61, p. 78, providing, "In any county in this state, where a court of competent jurisdiction has held that section 9692, Comp. Stats. 1921, has been violated by attempting to levy a tax in excess of six mills, * * * it is hereby made the duty of the county assessor and the county treasurer of such county to immediately cancel said excess to the extent that such attempted levy exceeds six mills for general city purposes, and to correct and to reform the tax rolls of such county to conform thereto," the trial of the issues in a suit for mandamus and the finding in that action of the facts above stated, and the order in that action upon said officials to reform such tax rolls, is a sufficient compliance with the law.

2. **Municipal Corporations—Tax Limit—General Laws, not Charters, Controlling.**

The general laws of this state limit the tax levy for general city purposes to six mills. This general levy can be superseded only by a general law enacted by the Legislature and cannot be superseded by the provisions of a city charter. Oklahoma News Co. v. Ryan, 101 Okla. 151, 224 Pac. 969.

**3. Same—Method of Assessment and Collection.**

General taxes in this state must be assessed and collected pursuant to and under the authority of general laws enacted by the Legislature. City of Sapulpa v. Land, 101 Okla. 22, 223 Pac. 640. Such levy is not a matter of purely municipal concern.

Error from Superior Court, Pottawatomie County; Leander G. Pitman, Judge.

Mandamus by Alex Fisher and others against W. W. Gilbert, County Treasurer, and R. E. Warren, County Assessor. Judgment for plaintiffs, and defendants bring error. Affirmed.

Wyatt & Waldrep, for plaintiff in error.

Saunders & Pitman, for defendant in error.

GORDON, J. In this case the defendants in error on the 26th day of April, 1924, filed their petition in the superior court of Pottawatomie county, Okla., for a peremptory writ of mandamus to the plaintiffs in error, W. W. Gilbert, treasurer of Pottawatomie county, and R. C. Warren, assessor of Pottawatomie county, Okla., for the purpose of requiring said officials to cancel a tax levy of 3.7 mills which had been placed on the tax rolls of Pottawatomie county, for the use and benefit of the city of Shawnee, Okla. An alternative writ was issued. Defendants filed their answer and return to the alternative writ. A trial was had upon the petition and answer and return, and on the 30th day of April, 1924, the superior court of Pottawatomie county rendered judgment directing the issuance of a peremptory writ of mandamus against the plaintiffs in error commanding them to cancel from the tax rolls of Pottawatomie county, 3.7 mills of the 9.7 mills ordered by the excise board of said county for current expenses for the fiscal year beginning July 1, 1923, and ending June 30, 1924, and to reform the tax rolls of said county to conform to said order. In the trial, by stipulation of the parties, a jury was waived and the cause submitted to the court. After judgment rendered, motion for new trial was filed and overruled, exceptions taken, and the cause is now regularly here upon appeal. The parties will be designated as in the trial court.

In their petition, plaintiffs allege that they are residents and taxpayers of the city of Shawnee, and that they bring this action for themselves and all other parties similarly situated. They allege the official character of the defendants, and further that on the ——day of——, 1923, the excise board of Pottawatomie county made a levy of 9.7 mills for current expenses for the city of Shawnee, for the fiscal year beginning July 1, 1923, and ending June 30, 1924. That said levy has been spread of record upon the tax rolls. They set out section 9692, Comp. Stat. 1921, which limits the levy by cities for current expenses to not more than six mills, and plaintiffs say that the levy of 9.7 mills was in violation of the law, to the extent of 3.7 mills.

In their petition plaintiffs set forth the act of the Legislature of the state of Oklahoma, of March 17, 1924, being Senate Bill No. 89, providing for the correction of tax rolls where excessive levy has been made. They allege that it is the duty of the defendants to correct and reform said tax rolls as above indicated and that plaintiffs have requested defendants so to do, but that defendants have refused and still refuse to make such correction. It is alleged that there is no adequate remedy at law afforded plaintiffs or other individual taxpayers similarly situated, and they pray for an alternative writ of mandamus requiring the defendants to cancel such excessive levy, and for such other and further relief as may be just and proper.

In their answer and return to the alternative writ, defendants first attack the jurisdiction of the court for the reason that the alternative writ was not issued, allowed, and served as by law required. They deny each and every allegation contained in the petition and the alternative writ, except they admit that they are officials, as alleged in the petition. Defendants allege the fact to be that 9.7 mills was not levied for the current expenses of the city of Shawnee, for the fiscal year above mentioned, but that only the sum of six mills was levied for such current expenses. That in addition to said levy of six mills, 3.7 mills was lawfully levied for the purpose of providing funds for repairing streets, avenues, and alleys which had been already paved and improved, and that said additional levy of 3.7 mills was also for the purpose of paying the cost of intersections and alley crossings in streets, avenues, and alleys of said city which were being paved and otherwise permanently improved, and for the purpose of reconstructing and resurfacing streets, avenues, and alleys which had been permanently improved. Defendants further plead that the act of the Legislature, approved March 17, 1924, being Senate Bill No. 89, was a special act applicable only to Oklahoma county, and affecting no other county in the state. Defendants plead that plaintiffs have an adequate remedy at law as provided in section

9971, Comp. Stats. 1921, and that the remedy provided by said statute is exclusive and the trial court is without authority to issue the writ. Upon the trial of the case, the only testimony introduced was that of the county clerk of Pottawatomie county. By this witness the financial statement and estimate of the levy for the city of Shawnee for 1923-4 was introduced, and it was stipulated that plaintiffs are resident taxpayers in the city of Shawnee, and own property subject to taxation for the fiscal year 1923-4.

Defendants introduced no evidence, but upon the awarding of the peremptory writ by the trial court, brought the cause here on appeal.

In their brief in this court, defendants, plaintiffs in error here, stand upon two propositions: (1) Assuming the tax complained of to be illegal, there is no basis in law for the issuance of the writ of mandamus or for the judgment of the court. (2) The taxes so levied and complained of are in all respects legal and in compliance with the law.

We will consider these two propositions in the order in which they have been set out. First, the contention of defendants "that there is no basis in law for the issuance of the writ of mandamus or for the judgment of the court." It is claimed by the plaintiffs in error that if the levy complained of was illegal, it became the duty of the plaintiffs below, under section 9971, Comp. Stats. 1921, to pay this tax under protest and bring suit for its recovery. To sustain this proposition, defendants cite the numerous decisions of this court holding that a taxpayer may not resort to equity or injunctive relief in such a case, but must proceed in accordance with the statute above quoted, and that said statute furnishes a plain, speedy, and adequate remedy for the taxpayer. This section of the statute was passed for the very purpose of preventing numerous actions seeking injunctions against the collecting authorities, and for the further purpose of preventing delay in the ordinary tax collection. But at the special session of the Legislature of the state of Oklahoma, in 1924, Senate Bill No. 89 was passed, and the act was approved on March 17, 1924. (See Session Laws, 1923-24, chap. 61, p. 78.) The title of this act is as follows:

"Correction of Tax Rolls.

"An act providing for the correction of the tax rolls in certain cases, for the refunding of certain taxes illegally levied and heretofore collected, and authorizing an emergency tax levy to be voted for general city pur-

poses under the conditions therein named and providing for elections for such purposes for future fiscal years, and declaring an emergency."

Section 1 of the act, being the important portion thereof, so far as this case is concerned, is as follows:

"Section 1. In any county in this state, where a court of competent jurisdiction has held that section 9692, Compiled Oklahoma Statutes, 1921, has been violated by attempting to levy for general city purposes for the fiscal year 1923-4 a tax in excess of 6 mills upon each dollar of taxable property subject to ad valorem tax in such city for the said year 1923-4, such tax having been spread of record upon the tax rolls of such county, it is hereby made the duty of the county assessor and the county treasurer of such county to immediately cancel said excess to the extent that such attempted levy exceeds 6 mills for general city purposes, and to correct and reform the tax rolls of such county to conform thereto:

"Provided, that where any taxpayer has, prior to the taking effect of this act, paid the 1923-4 taxes for general city purposes in excess of 6 mills, such excess shall be refunded by the county treasurer to the taxpayer paying the same, out of any funds then in, or thereafter coming into his hands belonging to said city for such fiscal year, and making the proper accounting and adjustment for the same, and shall thereon take from said taxpayer an original and carbon copy of receipt therefor, and shall deliver and file with the city treasurer of said city, such original receipt, and shall retain said carbon copy thereof; provided, further, that any taxpayer entitled to such refund shall make demand for the same within six months from the date of the passage and approval of this act."

Section 2 provides that in any city affected by section 1 of the act. there may be held an election to authorize such tax levy as may be sufficient to properly maintain the city government during the remainder of the fiscal year 1923-4. This act was passed as an emergency matter.

It will be noted that section 1, above quoted, makes it the duty of the county assessor and the county treasurer of each county to cancel any tax levy exceeding six mills which has been levied for general city purposes. The particular language most important to be considered here is:

"In any county in this state, where a court of competent jurisdiction has held that section 9692, Compiled Oklahoma Statutes, 1921, has been violated by attempting to levy for general city purposes for the fiscal year 1923-24, a tax in excess of 6

mills, * * * it is hereby made the duty of the county assessor and the county treasurer of such county to immediately cancel said excess. * * *"

It is claimed by defendants that this section should be construed as that the cancellation of the excessive levy should be made to apply only to those counties where a court of competent jurisdiction had held that the section mentioned had been violated. In other words, as we understand their contention, a case must be first brought in a court of competent jurisdiction within the particular county to determine whether an excessive levy has been made. That court must determine this question in the affirmative, and upon such determination it becomes the duty of the proper officials to cancel the excess upon the rolls. After the determination of such an action by such a court, if we understand the contention correctly, mandamus would lie upon refusal to cancel. It will be seen, if this theory is correct, that an action must necessarily be begun in some competent court in each county before the population of that county may be relieved of an excessive levy. Failing to bring such action, the old procedure of the payment of the illegal tax by each citizen must be followed, and the tax paid under protest and suit brought in each individual case to recover the tax. With this argument we cannot agree. In order to determine the true meaning of this act and the intent of the Legislature, we must consider the conditions as they existed at the time of the passage of the act and the mischief or evil which was intended to be remedied by the act.

On March 4, 1924, in a certain cause numbered 14862, in the Supreme Court of the state of Oklahoma, entitled Oklahoma News Company v. Ryan, 101 Okla. 151, 224 Pac. 969, judgment was rendered holding that the total levy for current expenses for each city in this state was limited to 6 mills on the dollar unless a special election was held as therein defined. Prior to the rendition of this decision, many of the cities had levied taxes in excess of 6 mills for current expenses. By this decision every levy in excess of 6 mills for current expenses was declared void as to such excess. This necessitated some method of refinancing in the various cities. It also created a condition whereby each taxpayer in these cities would be compelled to pay an illegal tax under protest and sue for its recovery. In order to assist the cities in their refinancing, the act above referred to provided for a special election whereby an additional tax could be levied, not exceeding the constitutional limit, to take care of the pressing needs of the city, and further, in order to obviate the necessity of the payment under protest of such illegal tax and thousands of individual suits to recover the same, the Legislature provided that it was the duty of the county assessor and county treasurer to immediately cancel such excess and to correct and reform the tax rolls of such county to conform thereto. In doing this the act provided that:

"In any county in this state, where a court of competent jurisdiction has held that section 9692, Compiled Oklahoma Statutes, 1921, has been violated by attempting to levy for general city purposes for the fiscal year 1923-24, a tax in excess of 6 mills * * * it is hereby made the duty of the county assessor and the county treasurer of such county to immediately cancel said excess. * * *"

It is for us to determine whether the Legislature intended by the language above used to say that such excess should be canceled only in such counties wherein a judgment of a court of competent jurisdiction had held that section 9692 had been violated by such excess levy. In construing this statute, we must be guided by the rules laid down regarding statutory construction. The intent of the statute is the real law. If the intent is plainly expressed, it is to be followed without further inquiry. The entire statute must be looked to in order to determine the intent. Lewis, Sutherland's Statutory Construction, vol. 2, sections 363, 367, 368, 369, 370, 376.

When the decision in the case of Oklahoma News Company v. Ryan, supra, was handed down by this court, on March 4, 1924, it became thereby the duty of the officers, defendants in this cause, without further act of the Legislature to reform the tax rolls to comply with the law. The jurisdiction of this court extends over the entire state and the judgment of this court is and was controlling upon the officials of Pottawatomie county. If, therefore, a levy in excess of 6 mills had been made for current expenses for the city of Shawnee, the judgment of this court was sufficient to authorize and direct the canceling of the excess and the Legislature could not have intended to say that before such excess should be canceled a suit must be filed in some court in Pottawatomie county. But there might arise a question as to whether the levy made was solely for current expenses, and in such case it might take a trial before a court of competent jurisdiction to determine this question, and therefore, we think it plain that the Legislature meant that unless

the whole question of the invalidity of such a levy was settled by the judgment in each county so that no real question arose whether the same was in violation of law, suit must be instituted in any county where there was such a question to determine whether such levy was excessive.

The Legislature did not attempt to define the character of suit which should be brought. It only provided that there should be a judgment of a court of competent jurisdiction. This provision relieved the inhabitants from the necessity of paying under protest and filing suits for recovery of illegal taxes so paid, and this was a wise provision of the Legislature, because it took from the courts the burden of numerous lawsuits and relieved the inhabitants of the expense of such suits, and further, the bringing of one action would inure to the benefit of every inhabitant, whether a large or small taxpayer, and it is well known that the small taxpayer can ordinarily not afford to go into the courts to recover the taxes illegally paid. The action begun here is a petition for a writ of mandamus, but in this action issues of law and fact may be and were tried by the court. 18 R. C. L. secs. 312, 313, 325. In its judgment, the court, being a court of competent jurisdiction, found the facts to be that the levy in question was made for current expenses; that it was excessive to the extent of 3.7 mills, and directed that such excess be canceled and the tax rolls reformed to this extent.

It appears to us that in this action, and by this judgment, all the requirements of the act of the Legislature have been met and by this provision and this special act, the Legislature has done away with the necessity for the payment of the tax and the suit for its recovery under the particular circumstances mentioned in the act. We therefore hold upon the first proposition submitted by plaintiffs in error that it was not necessary to bring a preliminary suit and render judgment holding the tax illegal before beginning this suit for the writ of mandamus, but that this suit meets all the requirements of the law.

2. The second proposition presented by plaintiffs in error is that "the taxes so levied and complained of are in all respects legal and in compliance with the law." In order to justify this statement, plaintiffs in error claimed, first, that included in this levy of 9.7 mills were certain provisions for contingent and paving expenses and that the levy was not solely for current expenses. The trial court found that the levy was made solely for current expenses, and with this conclusion we agree. The exhibits introduced in evidence, and against which there was no attack, except as to their competency in this particular litigation, show that the levy was for current expenses only and by this we are governed. If there had been a necessity of providing for paving expenditures, the method provided by law for such expenditures should have been followed.

It is next contended by plaintiffs in error that the city of Shawnee was authorized by its charter to levy for current expenses not to exceed ten mills, and they attempt to differentiate the charter of the city of Shawnee from the charter of Oklahoma City. They take the position that the levy of the tax for current expenses by the city upon the property of the inhabitants of the city is a matter of purely municipal concern. It is argued that in the case of Oklahoma News Company v. Ryan, supra, the sole question under consideration was the charter of Oklahoma City, which charter provides:

"* * * That the levy shall not exceed the limitation provided in the Constitution and laws of the state"

—while the charter of the city of Shawnee provides:

"* * * That the city shall, through its officers, fix the rate of per cent. of levy not to exceed the constitutional limitation of ten mills."

The argument made by plaintiffs in error that the charter of the city adopted by the city under the sanction of Constitution and laws is supreme as to purely municipal matters, is entitled to great weight and is sustained by many authorities. If the matter of a levy of a general tax for city purposes is one of purely municipal concern, the charter of the city is supreme. But our court has decided this question adversely to the contention of plaintiffs in error. In the case of Oklahoma News Company v. Ryan, supra, paragraph 9 of the syllabus is as follows:

"Section 9692, Comp. Stat. 1921, limits the total levy for current expenses for each city in this state to six mills on the dollar, unless an additional levy is authorized by an election held as provided under sections 9707 and 9712, inclusive, and these provisions of the statute limit the levy which can be made in all cities in this state governed by charters or otherwise. Cities in this state receive authority to make tax levies by virtue of general laws enacted by the Legislature, and not otherwise, and in the absence of legislative authority, the city has no power to assess and collect a tax at all. The general laws of this state granting to cities the power to levy taxes are found in sections

9692, 9699, 9707 to 9712, inclusive, and provisions of charters of cities do not supersede these general laws. The amount of tax authorized to be levied by a municipality and the manner of levying the same, is a matter of general public interest and can be accomplished only by general laws, and not by charter provisions.'

And paragraph 10 of the syllabus is as follows:

"The 'current expenses' of cities of this state, which are limited to six mills by section 9692, Comp. Stat. 1921, include not only current recurring expenses of the city government, but include any expenditures for which a tax is authorized to be levied by the Legislature for any current fiscal year other than the taxes authorized by sections 10 and 27 of art. 10 of the Constitution and the annual installments on bond issues and judgments, and interest thereon."

In the body of the opinion, p. 976, 224 Pac., we find the following:

"The Constitution confers no authority on a city to levy a tax, but the Legislature is authorized to confer this power. Section 9, art. 10, limits the amount of tax which may be authorized to be levied by the Legislature and section 20, art. 10, prohibits the Legislature from imposing any tax for city purposes, but authorizes the Legislature by general laws to confer on the city the power to assess and collect such taxes. In the absence of legislative authority, the city has no power to assess and collect a tax at all. Metropolitan Theater v. City of Chicago, 228 U. S. 61; Edgerton v. Goldboro Water Co. (N. C.) 35 S. E. 243; Metropolitan Ry. Co. v. State Bd. of Tax Com'rs (N. Y.) 67 N. E. 69. The authority of Oklahoma City to levy a tax must be found in the general laws enacted by the Legislature. What, then, is the general law of this state granting to Oklahoma City the power to levy a tax? It is found in sections 9692, 9699, and 9797. Since the authority to make the levy for city purposes must be granted by general laws, and since no levy can be made unless made under authority of a legislative enactment, the statutes above referred to must be construed as general laws or no authority for the city levy exists. If these sections of the statute are construed as general laws, the charter of Oklahoma City does not supersede the same, as the charter in terms provides:

" 'That the levy shall not exceed the limitations provided by the Constitution and laws of the state.'

"The numerous authorities cited by the defendant are to the effect that the laws of the state as used in section 4508 of the statutes, mean the general laws of the state. That the statutes of the state providing for the assessment and collection of taxes are general laws, and not laws of purely municipal concern, was determined in the case of City of Sapulpa v. Paul Land, 101 Okla. 22, 223 Pac. 640. We adhere to the views therein expressed and conclude that the amount of tax authorized to be levied by a municipality and the manner of levying the same is a matter of general public interest and can be accomplished only by general laws, and not by charter provisions.

"The general laws of the state limit the levy for current expenses for cities to six mills, but with authority to make an additional levy, provided an election is held therefor. This general law can be superseded only by a general law enacted by the Legislature, and cannot be superseded by the provisions of a city charter. Sections 9707 to 9712, inclusive, which authorize an additional levy where authorized by an election for that purpose, do not simply provide a procedure for making a levy, but confer authority upon the various municipalities to make the increased levies and such additional levies can be made only by complying with these sections of the statute."

It is true that the charter of the city of Shawnee provides for the levy of a tax not in excess of the constitutional limit of ten mills, and by the terms of the charter there is no expressed submission to the laws of the state concerning taxation. But, under the decisions of our court, even an expressed provision in the charter, that a tax of ten mills might be levied, would not supersede the general law of the state on this subject. This question is now settled by the decisions above referred to. These decisions have been recognized by the Legislature of this state, which has passed an act intended to relieve any distress which might have arisen in the cities of the state over their financial matters by reason of a misapprehension of the law. It is clearly laid down in the case above referred to and in the case of the City of Sapulpa v. Land, 101 Okla. 22, 223 Pac. 640, that the levy of an ad valorem tax within the cities of the state is a matter of general concern, and not a purely municipal concern. In the last named case, on page 34, Mr. Justice Kennamer said:

"It appears from an examination of the adjudicated cases by this court that this court has uniformly held that the provisions of a charter adopted pursuant to section 3a, article 18, Williams' Ann. Constitution, become the organic law of the municipality and supersede the laws of the state in conflict therewith, in so far as such general laws attempted to regulate purely municipal matters. Owen v. Tulsa, 27 Okla. 264, 111 Pac. 320; Lackey v. Estate, 29 Okla. 255, 116 Pac. 913; State v. Linn, 49 Okla. 526, 153 Pac. 826; City of Collinsville v. Ward, 64 Okla. 30, 165 Pac. 1145.

"A careful examination of these cases and the cases from other jurisdictions leaves the question as to what constitutes. purely municipal matters or affairs a question difficult of determination, as there does not appear to be any well-established rule by which it may be determined as to just what affairs or matters are purely municipal. In considering the questions involved in this appeal, we deem it advisable to consider the pertinent constitutional provisions which must necessarily be considered in properly determining the same. * * *"

And on page 25:

"While it may be conceded that it was the intention of the framers of the Constitution by authorizing municipalities of over 2,000 inhabitants to adopt a charter to afford such inhabitants the fullest measure of local self-government consistent with the Constitution and laws of the state, yet it must be borne in mind that such municipalities, in exercising the power of taxation, become involved in a matter under our system of government which is the proper subject of constitutional and general law. This, for the reason that the exercise of the arbitrary power of taxation is subject to the regulation of the supreme sovereign power, which in such case is the state. This is necessary in order that the tax system may be uniform, and afford all citizens equal protection of the law. * * *"

And on page 26:

"It is, therefore, our conclusion that taxes in this state must be assessed and collected pursuant to and under the authority of general laws enacted by the Legislature."

It is of vast importance to the whole state that this question remain settled. We adhere to the former opinion of this court upon this matter, and therefore hold that the statute fixing the levy for current expenses and not to exceed six mills is binding upon cities in this state, and supersedes any charter provision to the contrary. The judgment of the trial court is affirmed.

JOHNSON, C. J., and NICHOLSON, HARRISON, BRANSON, and WARREN, JJ., concur.