**ROCHELLE v. ANDERSON et al.**

No. 15508—Opinion Filed June 30, 1925.

Rehearing Denied Sept. 29, 1925.

(Syllabus.)

**1. Deeds—Estoppel of Grantor as to Amount of Land.**

Where the owner of lands who is well educated, and possessed of her faculties, signs and executes a deed to her lands without reading the same, which she delivers to her husband, who, pursuant to her instructions, delivers it to the grantee, held, she is estopped from denying the provisions of said deed relative to the amount of land conveyed thereby, in the absence of fraud on the part of the grantee or in the absence of a mutual mistake.

**2. Alteration of Instrument—Mere Spoliation of Deed by Stranger—Effect.**

Although a material alteration in a deed by a stranger without the privity of any of the parties thereto cannot enlarge the obligations of the grantor, yet it does not affect the right to enforce the instrument as it was originally written if its original terms may be ascertained.

**3. Same—No Implied Authority of Husband to Alter Wife's Deed.**

The mere marital relation, coupled with the possession of the deed by the husband of the grantor, with authority to deliver it to the grantee, does not justify an implication of authority in the husband to make a material alteration therein.

**4. Reformation of Instruments — Mutual Mistake in Description of Land in Deed.**

A court of equity has power to correct a mutual mistake in the description of land conveyed, and make a deed thereto conform to the real intention of the parties, but in order to authorize such reformation, the proof must be clear, unequivocal, and convincing as to such mistake and its mutuality.

**5. Appeal and Error — Review of Equity Case—Reversal.**

In a case of purely equitable cognizance this court may consider the whole record, and weigh the evidence, and if the judgment of the trial court is against the weight of the evidence, it may reverse and remand the cause with directions to enter the judgment that should have been rendered in the first instance.

**6. Same.**

Record examined, and held, that the judgment of the trial court is clearly against the weight of the evidence.

Error from District Court, Creek County; Fred A. Speakman, Judge.

Action by Nettie Rochelle against O. S. Anderson et al. to cancel deeds and quiet title. From a judgment in favor of the defendants, plaintiff appeals. Reversed and remanded.

W. D. Halfhill and Watts & Broaddus, for plaintiff in error.

Hughes, Foster & Ellinghausen, for defendants in error.

MASON, J. The plaintiff in error, plaintiff below, is a Creek Indian of one-thirty-second degree of Indian blood, and as such had allotted to her two noncontiguous tracts of land of 80 acres each, described as follows: The west half of the southwest quarter of section five and the east half of the southwest quarter of section seven, both in township nineteen north, range eight east. The latter 80 acres is the tract in controversy.

On October 27, 1922, plaintiff and her husband, Walter W. Rochelle, went to the office of one Wortman, a lawyer in the city of Tulsa, where certain deeds were executed, one covering 40 acres of the land in section five and one covering the 80 acres in section seven. At the time of the execution of these deeds, no one was present except the plaintiff and her husband and Mr. Workman, the notary public, and his stenographer. After their execution the plaintiff gave the deeds to her husband to be delivered. The deed in controversy, conveying the land in section 7, was left by him with the First State Bank of Oilton, with directions to deliver it to the defendant O. S. Anderson, the grantee, after he had had an opportunity to examine the title and upon the payment of $1,500.

After Mr. Rochelle had left the deed with the bank it was discovered that the deed described the west half of the southwest quarter of section seven, which the plaintiff did not own, instead of the east half of the southwest quarter of section seven, which was the only land in that section owned by the plaintiff. About the time of the execution of the deeds, the plaintiff and her husband moved to Dallas, Tex.

Upon the discovery of the misdescription in the deed, Mr. Abshire, cashier of the bank where the deed had been left for delivery, mailed the deed to the plaintiff's husband at Dallas, with instructions to either execute a new deed or correct the description in the old one. In a few days the deed was returned with the description changed so as to show the land conveyed thereby to be the east half instead of the west half of the southwest quarter of section seven. Abshire

then delivered the deed to Anderson, who paid the First State Bank of Oilton the sum of $1,500, which in accordance with instructions given by Mr. Rochelle was deposited to the joint account of the plaintiff and her husband.

The bank mailed a signature or identification card to Mr. Rochelle at Dallas, which was returned bearing the signatures of both the plaintiff and her husband, and which authorized checks signed by either party to be cashed by the bank. There was nothing, however, on said card to indicate what bank it was from, and the plaintiff testified that her husband informed her that it was from the bank in Dallas in which the funds from the sale of the land in section 5 had been deposited. Plaintiff also testified that she had no knowledge of any funds being deposited to her credit in the bank at Oilton. The entire deposit was drawn out on checks signed by the husband.

A short time after this transaction the husband abandoned the plaintiff and since then she has not heard from him.

Subsequent to the change in the description of the deed, O. S. Anderson and his wife conveyed a one-half interest in said land to the defendant R. B. Davidson, who had prior knowledge of such change in the description.

This action was then commenced by the plaintiff, Nettie Rochelle, to cancel the deed under which Anderson claimed the lands in section seven, and the deed under which Anderson attempted to convey an interest therein to Davidson, to quiet title in her to said land, and for damages.

The trial court found the issues in favor of the defendants, and the plaintiff has appealed.

For reversal it is first contended that the undisputed evidence discloses that the plaintiff did not intend to convey the land in controversy; that she had no knowledge that said land was conveyed by either deed until a short time before filing this action; that she was induced to execute said deeds through the fraudulent representations of her husband. Said evidence further discloses that plaintiff was desirous of selling the 40 acres in section five, and that her husband represented to her that he had found a purchaser who resided in Terlton, Okla. The plaintiff also testified that her husband represented to her that said land had prospects of becoming valuable as oil land, and that the deed should be drawn so as to reserve the oil rights to the plaintiff, but that an-

other deed should be drawn conveying all the title of the plaintiff, which deed was to be delivered in case the purchaser refused to accept the first deed. She also testified that she signed the two deeds upon such representations of her husband, and under the belief that they both conveyed the same land, and that her husband was to deliver only one of the said deeds.

None of the defendants were present at the time the deeds were executed, and there is no evidence that they were parties to said fraud, or that they had any knowledge thereof.

The plaintiff was 19 years of age at that time. She only lacked a few months of finishing a highschool course. She was educated as a stenographer. No contention is made but what she possessed all her faculties. She was present and affixed her signature thereto without reading said deeds, although she testified she "glanced through" one of them. If she had read the instruments she would have discovered that one conveyed 40 acres, while the other conveyed 80 acres; that one conveyed land located in section five, while that conveyed by the other was in section seven; that the deeds were made out to different grantees.

We conclude that, although her testimony that she had no intention of selling the land in section seven was uncontradicted, yet, under such circumstances, she would be estopped to deny the written provisions of the deed as to what lands were to be conveyed thereby.

It is next contended that the change in the deed made after its execution and acknowledgment by the plaintiff renders it void. In 1 R. C. L., Alteration of Instruments, section 26, page 990, the rule stated is as follows:

"It is a well-established rule that any material alteration in a written instrument, after the execution thereof, made either directly or indirectly by one claiming a benefit under it, without the consent of the party sought to be charged thereon, will render the instrument void as to the latter, even in the hands of an innocent holder, so far as relates to the executory provisions thereof. Such alteration deprives the holder responsible for it of any executory rights or right of action thereon, and it is generally held, destroys the evidential force and effect of the instrument."

There is no evidence that the change in the deed under consideration was made either directly or indirectly by any of the defendants. On the contrary, the defendants con-

tend that when the purported mistake in the deed was discovered, it was delivered to the husband of the plaintiff, who was acting as her agent, and that the surrounding circumstances are sufficient to establish the fact that such change was made with her knowledge and consent.

The mere marital relation, coupled with the possession of the instrument by the husband, does not justify an implication of authority in the husband to make an alteration. 2 C. J. section 111, page 1238; Foote v. Hambrick (Miss.) 11 South. 567; 35 A. S. R. 631; Smith v. Fellows 41 N. Y. Super. 36. Nor will the fact that one has possession of an instrument as agent for the purpose of delivering it to another confer authority on such agent to make a change in such instrument.

Some contention is also made that the plaintiff ratified her husband's acts in changing said deed, by signing the identification card of the Bank of Oilton, authorizing the withdrawal of the funds which were deposited therein as the consideration for said deed. We see no merit in such contention. The record discloses that said card contained nothing indicating what bank it was from, and the uncontradicted testimony of the plaintiff is that she was informed by her husband and was of the opinion that it was from the Dallas bank. There is no evidence that the plaintiff at any time had any knowledge that said money was deposited to her credit in said bank. We conclude that there was no evidence of such an alteration in the deed as to make it void, although it is clear that a change was made therein by the husband of the plaintiff, who, under the state of the record, was a stranger to the transaction.

Although the rule was once to the contrary, it is now well established that a change made in an instrument by a stranger to it and without the privity or consent of the parties interested, constitutes a mere spoliation as distinguished from an alteration, and is in legal contemplation wholly immaterial and ineffective to give to the instrument any other or different meaning or operation than that which attached to it before such change was made. While such a change cannot enlarge the obligations of the grantor, it does not affect the right to enforce the instrument as it was originally written if its original terms may be ascertained therefrom, and the change will not deprive the party of his right to have the instrument restored and enforced. 2 C. J. sec. 104, page 1233.

In 1 R. C. L. section 23, page 983, the rule is announced as follows:

"Though a few early cases followed the English doctrine, yet the American rule, and with much the better reason, appears to be entirely the other way, and it would seem now to be completely settled in this country that a material alteration by a stranger without the privity of any of the parties thereto will not render an instrument void, if it can be shown, by evidence, what the language was as it originally stood. Such unauthorized act by a stranger is considered, strictly speaking, as being a spoliation rather than an alteration of the instrument. While it is a question of no little difficulty as to who is a stranger to the instrument and who is an authorized agent whose acts will be regarded as those of his principal, yet it may be stated as a general rule that the law will not ordinarily imply an authority from the fact that the holder of an instrument makes another an agent for the purpose of altering it. Nor will an agent be presumed to have authority to make a change in an instrument from the mere fact that he is authorized to receive the instrument, or to deliver it to another. In such cases an agent is considered to be in the same position as any other stranger to the instrument, and his act in altering it amounts to a spoliation and no more, unless subsequently adopted and ratified by his principal."

Having reached the conclusion that the change in the deed was not such an alteration as would make the deed void, but that it is only a spoliation, the defendants would be entitled to any benefits under it as it was before such change. This being impossible for the reason that the plaintiff does not own that land, the defendants insist that inasmuch as this is an equity case they are entitled to have the deed reformed so as to convey the land in section 7, owned by the plaintiff.

A court of equity has power to correct a mutual mistake in the description of land and make a deed thereto conform to the real intention of the parties, but the law does not authorize such reformation unless the proof is clear, unequivocal, and convincing as to such mistake and its mutuality.

This question was before this court in the case of Hope v. Bourland, 21 Okla. 864, 98 Pac. 580. In that case this court quoted with approval from Bishop on Contracts, sections 707 and 708, as follows:

"The mistake must, in general, be mutual, and it must be clearly established by the proofs, which may be either oral or written. Indeed in no case will a court decree an alteration in the terms of a duly execut-

ed written contract, unless the proofs are full, clear, and decisive."

See, also, Owen v. City of Tulsa, 27 Okla. 264, 111 Pac. 320; Cleveland v. Rankin, 48 Okla. 99, 149 Pac. 1131; Davidson v. Bailey, 53 Okla. 91, 155 Pac. 511; Christner v. Mc-Kay, 77 Okla. 116, 187 Pac. 207.

The evidence in the instant case falls far short of complying with the rule above announced. The evidence is not clear, unequivocal, or decisive that the parties mutually agreed as to the sale and purchase of the east half of the southwest quarter of section seven. On the contrary, the only evidence in the case is that of the plaintiff that she did not intend to convey or dispose of any of her land in section seven.

Under the rule heretofore laid down by this court, in an equity case this court has power to consider the whole record and weigh the evidence, and if the judgment of the court is against the weight of the evidence, it may reverse and remand the cause, with direction to enter the judgment that should have been rendered in the first instance. In carefully weighing the whole evidence, as introduced in this cause, we must conclude that the finding and decree of the trial court are clearly against the weight of the evidence.

The judgment of the trial court is reversed and the cause remanded, with directions to render judgment for the plaintiff.

NICHOLSON, C. J. and HARRISON, PHELPS. LESTER, HUNT, CLARK, and RILEY, JJ., concur.

Note—See under (1) 21 C. J. p. 1094, § 88. (2) 2 C. J. p. 1235. § 104: anno. 32 L. R. A. (N. S.) 284. L. R. A. 1918B, 489; 1 R. C. L. pp. 984, 990; 4 R. C. L. Supp. p. 67. (3) 2 C. J. p. 1238 § 111. (4) 34 Cyc. pp. 917, 984, 987. (5) 4 C. J. p. 902, § 2871. (6) 4 C. J. p. 902, § 2871.