### STATE ex rel. CITY OF OKMULGEE v. MORONEY et al.

No. 22969. Opinion Filed April 12, 1932.

L. L. Cowley, City Atty., for plaintiff in error.

James W. Irwin, Co. Atty., and C. W. King, for defendant in error Oklahoma Tax Commission.

A. L. Emery, for defendant in error Okmulgee County Taxpayers' League.

McNEILL, J. This is an appeal from the judgment of the district court of Okmulgee county, state of Oklahoma, rendered on the 1st day of October, 1931, in favor of the excise board of said county against the city of Okmulgee on plaintiff's petition for a writ of mandamus to require said excise board to approve its financial statement and budget of estimated needs for current expenses and library purposes for the city of Okmulgee for the fiscal year commencing July 1, 1931, and ending June 30, 1932. Plaintiff is a city of the first class operating under a freeholder's charter, and through the commissioners of said city prepared a financial statement and budget of the estimated needs for the fiscal year aforesaid and filed the same as provided by law with the county clerk of Okmulgee county as the secretary of the county excise board of said county. Thereafter said financial statement and budget of estimated needs for said fiscal year was returned by the county excise board of said county with the request that the same be revised and reduced. The commissioners of said city in an endeavor to conform therewith revised and reduced the same, and, after the same had been revised, it was filed on or about August 24, 1931, with said county clerk as the secretary of said county excise board, which board reduced the same over the objections of said plaintiff.

Plaintiff contends that the excise board is without right or authority to make such a reduction, when such estimate comes within the constitutional and statutory limitations, and that the action of said excise board discharges employees of said city and prevents the expenditure of items of expense which are needed and necessary for the needs and proper conduct of the affairs of said city.

The defendants allege in their answer:

"That the state of Oklahoma has by law placed upon them the final duty and responsibility to the citizens of the state, resident or owning property in Okmulgee county, to see that the burden of taxation for all governmental functions of said county and the municipal subdivisions thereof is legally and equitably placed, and that in the discharge of said duty it is not only their privilege, but their obligation to see that all restrictions of law, and of expedience within the law, are observed in estimating the needs, and the receipts, and fixing the limit

of the tax levy for said county and the several municipal subdivisions therein."

The trial court rendered judgment against plaintiff denying its application for a writ of mandamus and dismissed plaintiff's petition. Plaintiff has appealed from said judgment.

An examination of the record shows that the city commissioners asked for 79 different items in the budget and that the excise board eliminated five items and reduced 41 of the other items; that the said city commissioners asked for the fiscal year ending June 30, 1932, for the sum of $182,500, which was $55,264.30 less than that approved for the fiscal year ending June 30, 1931. On August 29, 1931, the excise board approved the sum of $135,735.61, thereby reducing the estimate which the city commissioners had asked for in the sum of $46,-764.50. The revised estimate was $100,-028.80, less than the amount levied for the fiscal year ending June 30, 1931. The following are items excluded by the excise board.

```
VI   Engineer & St. Dept. 2, Spec. services __$ 324.00
VIII Police Dept. 3, Office Supplies _____  200.00
IX   Fire Dept. 7, Equipm't & Apparatus___ 2425.00
X    Sanitary Dept. 2, Special Services _____  182.00
XIII Water Dept. 14 New Automobiles _____  600.00
```

The following are items which the excise board reduced. Plaintiff contends that said board had no authority to reduce these items.

```
                                          Amt. Reduced
I    Governing Board 1. Salaries etc. ____$ 7,050.00
VI   Engin. & St. Dept. 8, Street Light __  4,000.00
VIII Police Dept. 1, Salaries _____  6,080.00
IX   Fire Dept. 1, Salaries _____ 16,212.00
X    Sanitary Dept. 1, Salaries _____  1,000.00
XIII Water Department 1, Salaries _____  2,880.00
     Separate Funds
B    Street Paving & Repair, Total _____  1,581.97
D    Library Fund, Total, incld. salaries __  2,820.00
```

This case presents to this court a clear cut proposition of law in reference to the right and authority of the excise board to revise and reduce the budget and estimate of the plaintiff. No question of the lack of good faith or officious intermeddling enters into the controversy herein. The excise board was endeavoring to exercise what it considered its duty, right, and authority for a commendable purpose to lighten the burden of taxation upon those who are called upon to assume these pecuniary obligations, which now under depressed conditions are readily apparent to the taxpaying public.

Counsel for plaintiff set forth several assignments of error, but concisely states his contentions, in his brief, as follows:

"The only question for consideration here is whether or not the county excise board of Okmulgee county is authorized under section 9698, C. O. S. 1921, to revise and correct the budget or estimated needs of the city of Okmulgee for all necessary purposes for the fiscal year ending June 30, 1932, as prepared by the city of Okmulgee, by either striking items therefrom, increasing, or decreasing items thereof, or adding items thereto—that is, can the excise board discharge employees of the city of Okmulgee, by refusing to approve the amount of salary fixed by the city commissioners, or to lower the amount asked for salaries of employees and fixed as provided by the terms of the city charter of Okmulgee?"

Many cases have been cited in the briefs filed in this case in support of the contentions raised on the question at issue. It seems unnecessary to comment on these various cases. The former county excise board was created in 1917 (Laws 1917, ch. 226), and the present county excise board was created by the 13th Legislature, the act being passed on the 21st day of March, 1917, and is found in section 2, ch. 66, art. 2, p. 265, Session Laws 1931, the duties of which are set forth in section 3 of said act which reads as follows:

"The board of equalization and excise board for each county in the state, created and appointed as hereinbefore provided, shall succeed to and exercise all the duties, powers, and authority now vested in the board of equalization and excise board of each county, under existing laws. * * *"

The present board differs from the former board only in the number and manner of the selection of its members. The Legislature, in view of the various decisions of our court interpreting the legislative enactment of the creation of said excise board by the Act of 1917, did not see fit to change, alter, or modify any of the duties, powers, and authority which were heretofore vested in the board of equalization and the excise board of each county. This is pointedly significant in determining the issues involved in the instant case. We must assume that the Legislature in 1931 had full knowledge of its former acts, and was cognizant of the decisions of this court on the precise question of whether the county excise board had authority to revise and correct a budget or estimate of the probable needs of a city for necessary municipal purposes for the ensuing year as prepared by a city. This question was before the court in the case of Bodine v. City of Oklahoma City, 79 Okla. 106, 187 P. 209. The opinion was rendered on the 17th day of December, 1919, by Mr. Justice Higgins and was concurred in by all the Justices of said court. In that case the city had prepared a tax

budget and filed the same with the proper county officers, as provided for by its charter. The county excise board claimed to have authority to revise and correct said budget by either altering, changing, increasing, decreasing, or rejecting items set forth in said budget claimed by the commissioners to be necessary for municipal purposes. The city instituted suit against the members of the county excise board and the trial court enjoined them from revising or correcting said tax budget. The precise question was raised in that case which is attempted to be raised in the present case, and which has apparently given rise to some misunderstanding throughout the state as to the duties, powers, and authority of the excise board as now constituted.

The brief of the city of Oklahoma City, in the case of Bodine v. City of Oklahoma City, supra, contains the following language:

"The real question involved in this case, and one which we conceive to be of very great importance not only to the city of Oklahoma City, defendant in error, but to a great many other cities in Oklahoma operating under freeholders' charters, is:

"Does the city of Oklahoma City, operating and existing under a freeholders' charter adopted pursuant to sec. 3(a), art. 18, Constitution of Oklahoma, have the authority and right to levy and collect its taxes for municipal purposes without supervision of, or interference by, the county excise board; or, transversely, is the county excise board charged with the duty and clothed with the authority to modify, change, or alter the tax budget, or items thereof, as prepared by the board of commissioners of the city of Oklahoma, upon which to base the levy of taxes to defray the governmental expense of said city; the city having under its charter provisions a complete system for the assessment, levy and collection of its taxes without reference to the county excise board?"

In the body of the opinion, the court said:

"The only question for consideration here is whether or not the county excise board is authorized under section 5 to revise and correct the budget or estimate of the probable needs of the city for all necessary municipal purposes for the ensuing year as prepared by the city."

In the sixth paragraph of the syllabus, the court said:

"In the instant case we hold that the power and authority to revise and correct the tax budget or estimate of the city of Oklahoma City is with the mayor and city commissioners, and that the county excise board has no authority thereover."

We think the opinion in that case is a final answer to the issues raised in the instant case. Also, in the case of City of Pawhuska v. Pawhuska Oil & Gas Co. (in 1926) 118 Okla. 201, 248 P. 336, this court said:

"The sole purpose of the creation of the excise board appears to have been to provide a board whose sole duties are to levy the necessary ad valorem taxes to meet the needs of the various subdivisions of the state, and to keep such levies within the limitations fixed by the Constitution and the various statutes in matters relating to governmental affairs.

"We find no language in the statute from which it may be inferred that it was the intention of the Legislature to authorize or empower the excise board to exercise any supervisory control over the expenditures of incorporated cities and towns in the operation of public utilities owned exclusively by such municipalities."

The Legislature in 1931, with full knowledge of the interpretation given by this court as to the powers of the excise board to revise and correct such budget or estimate of the needs of the city prepared by its officials and which they considered necessary for municipal purposes, did not change, modify, or alter in any respect the powers or duties of the present excise board. Had the Legislature seen fit to change, modify, or alter such powers of such board, it is reasonable to assume that it would have sought to provide in the Act of 1931, in clear, positive, and unmistakable language, permitting nothing in that regard to be uncertain or obscure, as to the rights of such board to modify, change, alter, or reduce such an estimate, provided such estimate came within the constitutional and statutory limitation. This court has no power or authority to judicially legislate any new or additional powers in such board. When questions have been deliberately examined and decided by courts of last resort, the same should be settled law and closed. We consider it unnecessary to discuss other questions presented in the briefs.

We conclude that the Bodine Case, supra, which has been cited with approval in several of the opinions by this court, is controlling on the question at issue, and that the excise board is without authority to proceed in the instant case in the changing, altering, or reducing of the estimated needs of said city for its necessary current expenses for the fiscal year in question.

The judgment of the trial court is reversed and remanded, with directions to pro-

ceed not inconsistent with the views herein expressed.

RILEY, HEFNER, CULLISON, SWIN-DALL, and ANDREWS, JJ., concur. LES-TER, C. J., CLARK, V. C. J., and KORNE-GAY, J., dissent.

ANDREWS, J. (concurring specially). I concur in the opinion of the majority of this court in this cause and I desire to express views not expressed in the opinion of the majority.

In the opinion of this court, in Bodine v. City of Oklahoma City, 79 Okla. 106, 187 P. 209, the opinions of this court, in Rogers, Co. Treas., v. Bass & Harbour Co., 64 Okla. 321, 168 P. 212, and City of Collinsville v. Ward, 64 Okla. 30, 165 P. 1145, in so far as they held that a city operating under a charter form of government could only levy a tax for purely municipal purposes, were expressly overruled. In City of Collinsville v. Ward, supra, it was held that section 14, art. 10 of the Constitution was not intended to prohibit cities from adopting charter provisions authorizing the levy and collection by such cities of taxes for purposes that are purely municipal. By that decision the distinction pointed out in Thurston v. Caldwell, 40 Okla. 206, 137 P. 683, between taxes imposed for purely municipal purposes and taxes imposed for purposes in which the state has a sovereign interest, although of a municipal character, was pointed out and applied. Therein this court said:

"That the framers of the Constitution in writing said provision, and the people by adopting it, intended that it should be given effect and should have operation in some sphere, cannot be doubted. Other provisions of the Constitution indicate that the people recognized the right of the municipality in matters of purely local or municipal concern to levy taxes, as is shown by section 19, art. 9, which declares that every ordinance and resolution passed by any county, city, town, or municipal board or local legislative body levying a tax, shall specify distinctly the purposes for which said tax is levied, and by section 28, art. 10, requiring such municipality to levy sufficient additional revenue to create a sinking fund to be used for the purposes required by law. Gray's Lim. of Taxing Power and Public Indebtedness, sec. 677 (a), p. 335."

In Rogers, Co. Treas., v. Bass & Harbour Co., supra, it was held that section 20, art. 10 of the Constitution does not constitute a limitation upon the power of the Legislature to impose taxes for purposes in which the state has a sovereign interest, although

of municipal character. The same reasoning was applied, the same authorities were cited, and the same result was effected. Those decisions were overruled by this court in Bodine v. City of Oklahoma City, supra, only in so far as they held that a city operating under a charter form of government could only levy a tax for purely municipal purposes, and it was therein held that a city operating under a charter form of government could levy a tax for all legitimate and necessary municipal purposes consistent with and subject to the Constitution and laws of the state and that such a city is not limited merely to the levying of a tax for purposes purely municipal.

It is said that the Bodine Case has been overruled by implication by certain decisions of this court. It would seem, inasmuch as the Bodine Case, in terms, overruled prior decisions of this court, that, if it was to be overruled, it would be overruled in terms. It has not been overruled in terms. It has been cited by this court in Re Initiative Petition, City of Okmulgee, 89 Okla. 134, 214 P. 186, City of Sapulpa v. Land, 101 Okla. 22, 223 P. 640; Caruth v. State, 101 Okla. 93, 223 P. 186; Oklahoma News Co. v. Ryan, Co. Treas., 101 Okla. 151, 224 P. 969; Ryan, Co. Treas., v. Roach Drug Co., 113 Okla. 130, 239 P. 912, and City of Okmulgee v. Okmulgee Gas Co., 140 Okla. 88, 282 P. 640.

In Re Initiative Petition, City of Okmulgee, supra, it was held that it was beyond the power of the Legislature to run counter to the provisions of a charter or to interfere with municipal officers and inhabitants of a city in a matter of purely municipal concern.

In City of Sapulpa v. Land, supra, there was involved the question of the right to establish a lien on real estate for taxes and to foreclose the same. There was no question therein as to the making and approval of a budget for municipal purposes. With reference to the Bodine Case, it was therein said:

"It is conceded that in the Bodine Case the precise question in the case at bar was not involved. The only question involved in the case, supra, was whether or not the county excise board had authority to revise and correct the budget or estimate of the probable needs of the city for municipal purposes. It is apparent that the matter of the budget for the needs of a city is purely a municipal matter so long as the cost of such budget is within the limitation of the law."

In Caruth v. State, supra, the issue before this court was the question of the right to a writ of mandamus to require the mayor

to call a special election for the purpose of submitting to the qualified electors of a city the question of whether or not the charter of said city and all of the amendments thereof should be repealed. There was no question therein of the making or approval of a budget by municipal officers for municipal affairs.

In Oklahoma News Co. v. Ryan, supra, the action was to recover taxes paid under protest. It was therein contended that the city of Oklahoma City was not limited by the legislative limitation as to the rate of taxes and that the city could provide for a rate of levy within the constitutional limitation as to the rate of taxes. It was therein held that the rate of levy in excess of the legislative limitation was unauthorized and void. There is nothing in that decision to the effect that a chartered city may not provide for a rate of tax within the legislative limitation.

In Ryan v. Roach Drug Co., supra, the action was to recover taxes paid under protest. The city had wholly failed to submit its proposed budget to the excise board for any purpose. The question of the right of the county excise board to change an estimate made by a city within the limitation authorized by law was not before this court in that case, and this court so stated in the decision. The authority of the excise board was therein stated as follows:

"* * * and therefore the excise board of the county had exclusive jurisdiction to review the estimate submitted by the city for the purpose of determining whether the items submitted were within the limitation fixed by the statute and such other purposes as prescribed by the general laws of the state."

In City of Okmulgee v. Okmulgee Gas Co., supra, the Revocable Permit Law, chapter 102, Session Laws 1925, was in issue. The Bodine Case was not cited in the opinion, but it was cited in a dissenting opinion by Mr. Justice Hunt.

In Gilbert, Co. Treas., v. Fisher, 108 Okla. 67, 230 P. 705, the question presented was whether or not a city was limited as to the rate of taxation to the legislative limitation, or whether it could exceed the legislative limitation so long as it remained within the constitutional limitation. It was held that the statute fixing the rate for current expenses at not to exceed six mills is binding upon cities in this state, notwithstanding a city charter to the contrary.

In Jones, Co. Treas., v. Kennedy, 118 Okla. 224, 247 P. 53, no financial statement and estimate was submitted to the excise board,

and it was held that a budget for municipal purposes must be submitted to the excise board.

There is nothing in those decisions as to the right of a city to a tax levy within the legislative limitation when the budget of the city has been submitted to the county excise board. From all of those decisions of this court, I can conclude nothing other than that the rule stated in the Bodine Case is the applicable rule in the case at bar.

Had this court never spoken on the subject, I would be of that opinion, for, by the provisions of section 2, art. 18, of the Constitution:

"Every municipal corporation now existing within this state shall continue with all of its present rights and powers until otherwise provided by law, and shall always have the additional rights and powers conferred by this Constitution."

Therein are two constitutional provisions as to the rights of municipal corporations, one, that they shall continue with all their existing rights and powers until otherwise provided by law, and another, that they shall have the additional rights and powers conferred by the Constitution. With reference thereto, the codifiers included as a note thereunder, the following:

" 'Probably no Constitution was ever drafted that refers to the people so much power to be exercised by direct vote. Municipal corporations are given the right by direct vote to the people to form their own municipal charters. This general underlying idea that the people themselves have the power by direct vote to control their own affairs argues persuasively that it was the intention of the Constitution to give to municipal corporations directly the right to become indebted by vote of the taxpayers for the construction of public utilities.' Kane, J., in State v. Millar, 21 Okla. 448, 96 P. 747."

Prior to statehood, municipal corporations had been authorized to provide a rate of taxation almost without limitation. The rate of taxation for those purposes was limited by the provisions of section 9, art. 10, of the Constitution, and the Legislature imposed a further limitation. Section 9692, C. O. S. 1921. The Legislature has never provided that municipal corporations shall not fix rates of taxation for municipal purposes. Since there is no such inhibition, the rights granted by section 2, art. 18, supra, remain with the municipalities.

In addition to the rights enjoyed by municipal corporations at the time of the adoption

of the Constitution, as recognized by the provisions of the section quoted, such municipalities were given the additional rights and powers conferred by the Constitution.

Article 10 of the Constitution relates to revenue and taxation. By section 2 of that article, the Legislature is required to provide by law for an annual tax sufficient, with other resources, to defray the estimated ordinary expenses of the state for each fiscal year. By section 20 of the article, the Legislature is prohibited from imposing taxes for the purpose of any county, city, town, or other municipal corporation. When those two sections are considered together, there can be no question as to the constitutional intent. By section 9 of the article, any county may make an additional levy for county high school, and aid to the common schools. Therein, in terms, the county is authorized to levy a tax. In the same section provision is made for school districts to exceed the fixed limitation on condition that a majority of the voters thereof voting at an election vote for the increase. By section 11 of the article, a criminal penalty is imposed upon any officer of any city who directly or indirectly receives any interest, profit, or perquisites arising from the use or loan of money raised through his agency for city purposes. The language of section 13 of the article is:

"The state may select its subjects of taxation, and levy and collect its revenues independent of the counties, cities, or other municipal subdivisions."

By the provisions of section 19 of the article, every ordinance and resolution passed by any city board or legislative body, levying a tax, shall specify distinctly the purpose for which said tax is levied. By the provisions of section 20 of the article, the Legislature is authorized, by general laws, to confer upon the proper authorities of a city the power to assess and collect taxes. By the provisions of section 26 of the article, a city incurring an indebtedness pursuant to the provisions of that section is required, before or at the time of doing so, to provide for the collection of an annual tax sufficient to pay the interest on the indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof. There is an almost identical provision in section 27 of the article. In section 28 of the article, cities are required to levy sufficient **additional** revenue to create a sinking fund. The word "additional" therein may not be disregarded. When that word is given effect, it is apparent that it refers to rates of levy for current expense purposes. Neither can we disregard the language of section 20 of the article limiting the power of the Legislature to conferring upon "the proper authorities" of the municipal corporation the power to assess and collect municipal taxes. With reference to that language, I desire to call attention to the language of this court in Smartt v. Board of Com'rs, 67 Okla. 141, 169 P. 1101, wherein it was said:

"There has been much controversy among publicists and thinkers and much conflict in the decisions of the courts as to the proper and necessary limitations upon the powers delegated to the different departments and arms of the state government, but it is conceded by all that certain necessary fundamental functions must always be actively exercised in order to preserve the existence of the state and secure to the people the rights guaranteed to them, among which are the right to life, liberty, the possession of property, and the pursuit of happiness, and should the state become so impotent as to be unable to discharge these functions, there would result a failure of the purposes for which government was established. The surest way to bring about this result is to construe the Constitution in such a way as to place it in the power of one set of officials to deprive another of the means necessary for the performance of the duties imposed upon that other. If we give the Constitution such construction the enforcement of laws for the regulation and protection of the public peace and safety in any county might, in its ultimate analysis, depend upon the whim and caprice of certain local officials who might, by failing and refusing to make proper provision therefor, render it impossible to secure an enforcement of such laws by the officers charged with the duty of so doing."

If three members of an excise board, no one of which is required to live within a city, may be granted authority by the Legislature to refuse to make proper provision for the current expenses of the municipality and to interpose their discretion in conflict with the discretion of the municipal officers, similar authority might be granted to three members of a board, no one of whom would be required to live within the county, and, under that construction, the Legislature might provide for one board, consisting of three men sitting in Oklahoma City, with authority to say how much money might be raised by ad valorem taxation for the support of all of the municipalities of the state and the purpose for which money so raised might be used. In my opinion the excise board is not the proper authority of a city within the meaning of section 20 of the ar-

ticle. See School Dist. No. 85 v. School Dist. No. 71, 135 Okla. 270, 276 P. 186.

I cannot give my consent to such a departure from the principles of representative government. Those principles are well stated in McQuillin on Municipal Corporations, section 246, as follows:

"The right of local self-government, as an undoubted right of the people, is regarded as an inseparable incident to our republican form of government, and, therefore, all our Constitutions assume its continuance. As expressed in substance by Judge Cooley, all 'delegations of powers which they make, and the express and implied restraints which they impose' upon the several departments of government are to be always construed in the light of all recognized pre-existing rights and privileges of the people, either in their individual, or aggregate capacity as a local community.

"The Legislature cannot take away from the people of a town or city rights and privileges which they possessed as citizens of the state before the incorporation unless such rights have been expressly surrendered by organic provisions. As heretofore pointed out, the principal object of incorporation is to enable them to supply local needs and conveniences, or, additional rights and powers are granted to enable them better to govern themselves in all matters of local concern, and not to take away any rights or privileges they possessed before such grant was made."

—by the Supreme Court of Nebraska, in State ex rel. Smyth v. Moores, 76 N. W. 175, as follows:

"The right of local self-government in cities and towns (i. e., the power of the citizens thereof to govern themselves, as to matters purely local in their nature, through officers of their own selection) existed in this state at the time the present Constitution was framed, and was not surrendered upon the adoption of that instrument, but is vested in the people of the respective municipalities, and the Legislature is powerless to take it away."

—in Rathbone v. Wirth, 40 N. Y. S. 535, as follows:

"The principle I refer to is the principle of local self-government. * * * Local self-government is the school which fits people for self-government. Local self-government is the result, and also the most efficient preserver, of civil liberty. * * * The principle is one that runs through our entire system of government, from the road and school district up to the federal government. * * *"

—and by the Supreme Court of Iowa, in State ex rel. White v. Barker, 89 N. W. 204, as follows:

"The argument is that the intention to preserve and perpetuate the ancient right of local self-government, which the law recognizes as of common-law origin, and having no less than common-law franchises, is apparent throughout the scope of most American Constitutions. Some of the judges even go so far as to say 'that, local self-government having always been a part of the English and American system, we shall look for its recognition in any such instrument (Constitution); and, if not expressly recognized, it is still to be understood that all these instruments are framed with its present existence and anticipated continuance in view'; 'that back of all Constitutions are certain usages and maxims that have sprung from the habits of life, mode of thought, methods of trying facts, and mutual responsibilities in neighborhood interests; precepts that have come from revolutions which overturned tyrannies; sentiments of manly independence and self-control, which impelled our ancestors to summon the local community to redress local evils, instead of relying upon king or Legislature at a distance to do so; that form of living spirit of the lifeless skeleton known as the Constitution; that gives it force and attraction, and that distinguishes it from the numberless so-called Constitutions of Europe; and that this so-called living spirit should supply the interpretation of the words of the written charter.' * * *"

The judgment of the trial court is erroneous not only under the rule stated in the Bodine Case, but under the rule stated in Rogers, Co. Treas., v. Bass & Harbour Co., supra, City of Collinsville v. Ward, supra, and School Dist. No. 85 v. School Dist. No. 71, supra, and there is no decision of this court holding that the discretion of city officers as to the rate of levy within the three legislative limitations for a city is subject to the discretion of three men, no one of whom is required to be a resident or a taxpayer of the municipality.

Under the authorities cited, the judgment of the trial court is properly reversed.

---

LESTER, C. J. (dissenting). I dissent from the conclusion reached in this case for the reason that section 9698, O. O. S. 1921, provides, in part:

"The said board shall have power and authority to revise and correct any estimate certified to them by either striking items therefrom, increasing or decreasing items thereof, or adding items thereto, when in its opinion the needs of the municipality shall require. All revisions and corrections shall be as to specific items of the estimate and in no event shall any item or items of the estimate for current expense purposes be in-

creased, or any item added thereto, until such proposed increase or additional item shall have been advertised and published by the excise board in some newspaper of general circulation in the county, in one issue, if published in a weekly paper, and two consecutive issues if published in a daily paper. The cost of any such publication shall be paid by the municipality. When the excise board shall have examined, revised and adjusted the items of the respective estimates of the several municipalities, and shall have ascertained in separate items the needs of each, if the same shall be within the limits for current expenses as provided by law, they shall approve the said items and appropriate the respective amounts thereof for the purposes so found to be necessary."

The above section is the authority for the excise board to reduce levies unless said section is unconstitutional. This court has failed to give the statute the force expressed therein and this statute must stand and be given effect unless stricken down by this court as being unconstitutional. This the court has failed to do.

In my judgment, the excise board, under said section, has the right to proceed under the terms of the same and to strike items of estimate made by municipal boards or to reduce the same when said board deems same unreasonable or unnecessary for municipal needs, but if said excise board should act capriciously or arbitrarily, then their acts would be subject to review by the court.

---

KORNEGAY, J. (dissenting). I cannot assent to the doctrine of the majority. Its effect is too disastrous, as I view it, to the general welfare of the state. Its example to propagandists and self-servers elsewhere is alluring. The opinion is founded on the sands of the "Bodine Case," rather than upon the rock of the Constitution. It is but a step, though rather a long one, in "judicial legislation" that appears at times to obsess the minds of courts of last resort. This might aptly be termed an "ego complex," with a parting gesture, were it not, in fact, an usurpation, the ultimate effect, if not checked, being Constitution desecration, with resultant anarchy. Had the majority applied its analytical force, and considered the sources of governmental power, and its own power, as distinguished from a blind following of a case somewhere found, that contained language somewhat expressive of a desired conclusion, I apprehend it never would have reversed the lower court in this case. The doctrine of "stare decisis" is slightly involved, but in application the result is merely employing "casum mortuum et sepultum," to a consummation of "factum desideratum."

The language of the lower court, used at the time of pronouncing judgment, refusing to interfere with the excise board in the performance of the duties enjoined upon and entrusted to it by the Legislature, is most timely. At times, comic in describing the debauch of expenditures, with its accompanying headache thereafter, it pictures with true perspective the tragic results. Replete with expressions showing an accurate knowledge of the ills to be remedied, and the needed remedies to be applied, it commends itself to all thinking persons.

The reversal of the lower court's action appears to me to be without reason. This court displaces logic and consideration, with a court pronouncement that, when analyzed, never had an excuse, that was plausible, for its existence. Its birth was had, evidently, as the result of "growing pains," of an overly ambitious city, as distinguished from those of travail. Its progenitor was a district court. Later, this court held its funeral, and the district judge, who originally decided the case, attended the funeral and assisted at the burial, and, according to the record, shed not a tear or entered a dissent, but joined in the requiem.

The effect of following the Bodine Case is to affirm that in Oklahoma any "group of two thousand organized as a city, can with the sanction of the Governor, absolve itself from the duty of obeying the laws enacted by the Legislature." Evidently, however, such effect is not appreciated by the majority. Everybody recognizes that the taxing power is the most far-reaching power of government. On it rests all other powers of government. Without it, police power would be lifeless. It has been aptly said, "The power to tax, is the power to destroy." Arising out of this, great forensic battles are now being fought, and from its exercise violent revolutions, resulting in human slaughter, have been brought into existence. Such a revolution throughout the world is now on, peaceful in the main, but marked by occasional acts of violence. As a condition prescribed by both the federal and state Constitutions, each member of this court is bound to support both the federal Constitution and laws and the state Constitution and laws, and to obey them, and also defend them.

Under these conditions, the first thing for consideration is the language of the Constitution and of the acts of the Legislature.

To say we are bound by some court decision, that we would have decided the other way, is worse than begging the question. The written laws are fixed and not varied by desire, and are supreme, the decisions vacillate and are subordinate. They may help in diagnosis, but should never be allowed to take the place of conscious conscience.

The decision in this case, reversing the lower court, is based upon the binding effect of the case of Bodine v. City of Oklahoma City, 79 Okla. 106, 187 P. 209, opinion being filed on December 17, 1919. An inspection of the case shows that it expressly overruled expressions in two former decisions, namely, City of Collinsville v. Ward, 64 Okla. 30, 165 P. 1145, and Rogers v. Bass & Harbour, 64 Okla. 321, 168 P. 212, indicating that a city operating under a charter form of government was limited in levying and collecting taxes to purposes purely municipal. The 5th section of the syllabus is as follows:

"The opinions of this court in City of Collinsville v. Ward, 64 Okla. 30, 165 P. 1145, and Rogers v. Bass & Harbour, 64 Okla. 321, 168 P. 212, in so far as they hold that a city operating under a charter wherein the imposition of a tax for municipal purposes is authorized, is limited to a levy for purposes purely municipal only, in so far as they conflict with this opinion, are expressly overruled."

Section 4 of the syllabus in the Bodine Case is as follows:

"Article 18 and section 20 of art. 10 of the Constitution each performs a separate and useful purpose, and the limitation upon the Legislature to impose a tax under section 20 is in no wise a limitation on a city to impose a tax for necessary municipal purposes, where the terms of the charter permit."

The third section of the syllabus is:

"In a grant of authority to adopt a charter by a city as provided in article 18, there is the implied authority to include in the terms of the charter the power to assess, levy, and collect an ad valorem tax for all legitimate and necessary municipal purposes consistent with and subject to the Constitution and laws of the state, and the city is not limited merely to the imposition of a tax for purposes purely municipal only."

The second section is as follows:

"The Legislature has not as yet asserted itself contrary to the terms of the charter of the city of Oklahoma City for the purposes of raising revenues for municipal purposes by general law. We therefore hold that it was not the legislative intent, when acting under general law, to repeal the terms of the charter of the city in regard to its manner of raising revenues for municipal purposes."

The first section is as follows:

"The city of Oklahoma City, by the terms of its charter, adopted in accordance with section 3(a), art. 18 of the Constitution, provides for the assessment, preparation, revision, and correction of a tax budget, a levy and collection of taxes for municipal purposes by instrumentalities other than those provided by the general laws of the state. The county excise board, under section 5 of chapter 226 of the Session Laws of 1917, claims the power and authority to revise and correct the city budget. The city, under its charter, claims to possess the sole power to revise and correct its budget. We hold that there is a conflict of authority, and that under section 539 of the Revised Laws of 1910, as interpreted in Lackey v. State, 29 Okla. 255, 116 P. 913, and in Mitchell v. Carter, 31 Okla. 592, 122 P. 691, the terms of the charter must prevail, and that the authority and power of the revision and correction of the tax budget is with the mayor and city commissioners, and not with the county excise board."

The conclusion is in the sixth section of the syllabus, as follows:

"In the instant case we hold that the power and authority to revise and correct the tax budget or estimate of the city of Oklahoma City is with the mayor and city commissioners, and that the county excise board has no authority thereover."

It appears from the statement of the case that Judge James I. Phelps presided in the court below.

An inspection of the act of 1917, referred to in that opinion, known as House Bill No. 418, shows that section 7379, R. L. 1910, was thereby amended so as to read as therein announced. By reference to section 7379, we find that this was a very short section that was enacted in the year 1910, which created the original excise board. When the repealing clause is found, it will be observed that section 7380 was repealed. This was a section in the first law, which was short and conferred upon the board the "power to revise and correct any estimate certified to them, where the amount thereof is in excess of the just and reasonable needs of the municipality for which the same is made."

It is provided that when the excise board shall have approved each estimate, if the same shall be within the limitation for current expenses, provided by the first section of the article, the board should make the levy and certify to the county clerk. Section 7376 provided that 7 mills should be the

limit of a city levy. The limit of the Constitution is 10 mills. The permitted levy was reduced to 6 mills by the same Legislature. The powers of the board were more accurately defined in the law of 1917, House Bill No. 418, S. L. 1917, p. 244, c. 226. Section 2 of the act is as follows:

"Sec. 2. Each board of county commissioners, the mayor and council of each city or the offiers exercising like power in any city having a charter form of government, the board of trustees of each incorporated town, the directors of each township and the board of education of each independent school district shall meet on the first Monday in July of each year, and the directors of each school district shall meet on the second Tuesday in July of each year, and, shall respectively make in writing a financial statement showing the true fiscal condition of their respective municipalities as of the close of the previous year, and an itemized statement of estimated needs and probable income from sources other than ad valorem tax of each thereof for current expense for the current fiscal year. The financial statement shall be supported by schedules or exhibits showing by classes the amount of all receipts and disbursements, and shall be sworn to as being true and correct. The statement of estimated needs shall be itemized so as to show by classes, first, the several amounts necessary for the current expenses of the municipality, and each officer and department thereof. Second, the amount required by law, to be provided for sinking fund purposes; third, the probable income that will be received from all sources other than ad valorem. taxes, and shall be detailed in form and amount so as to disclose the several items for which the excise board is authorized and required in section 5 hereof, to approve estimates and make appropriations. Each financial statement and estimate for county, city, incorporated town, township and board of education, as prepared in accordance with the provisions of this section shall be published in some newspaper published in said municipality in one issue, if published in weekly newspaper and in two consecutive issues if published in daily; and if there be no paper published in each county, city, incorporated town, or township, then a copy of such statement and estimate shall be posted in at least five public places therein, which posting shall be made in each instance within five days after the meeting of said municipal board; said publication or posting shall be made in each instance by the board or authority making the estimate. Said estimates so made out and published as aforesaid shall as soon as completed be certified to the excise board of the county, together with an affidavit attached, showing the publication or posting thereof, as required by this act. The estimates and statements provided for in sec-

tion 4 shall also at the same time be transmitted to the excise board."

Section 5 of the act is as follows:

"Sec. 5. The excise board shall meet at the county seat on the last Saturday of July, and may adjourn from day to day and time to time thereafter, for the purpose of examining the financial statements for the previous fiscal year as submitted by the county and the several cities, towns, townships and school districts, and ascertaining the true fiscal condition of each thereof at the close of such year; and for the further purpose of examining the statements of estimated needs for current expense purposes for the current fiscal year as certified by each of said municipalities, and determining the items and amounts for which appropriations shall be made for such year, detailed as to each officer, board or department. The said board shall have power and authority to revise and correct any estimate certified to them by either striking items therefrom, increasing, or decreasing items thereof, or adding items thereto, when in its opinion the needs of the municipality shall require. All revisions and corrections shall be as to specific items of the estimate and in no event shall any item or items of the estimate for current expense purposes be increased, or any item added thereto, until such proposed increase or additional item shall have been advertised and published by the excise board in some newspaper of general circulation in the county, in, one issue, if published in a weekly paper, and two consecutive issues, if published in a daily paper. The cost of any such publication shall be paid by the municipality. When the excise board shall have examined, revised and adjusted the items of the respective estimates of the several municipalities, and shall have ascertained in separate items the needs of each, if the same shall be within the limits for current expenses as provided by law, they shall approve the said items and appropriate the respective amounts thereof for the purposes so found to be necessary. The appropriations made for the use of each separate office, board, commission or department of the several municipalities, shall be stated in separate items, and no appropriation shall be available for the use of more than one office, board, commission or department."

City and town appropriations are provided for in said act by subdivision (b) of section 5, as follows:

"(b) The appropriations for city and towns shall be itemized so as to show the amount of funds appropriated for the several offices, boards, commissions and departments and shall be detailed in separate items as to each thereof, as follows: for salaries and compensation of each officer and all regular deputies employees thereunder for special services and extra help; for office supplies,

blank books, stationery and printing; for postage, telephone and telegraph, for express, freight, and drayage; for light, fuel and water; for rent; for charities and aid to poor, for furniture and office equipment, for maintenance, renewals and extension; for purchase of park, building sites, and other real estate with appropriation for each, separately stated; for construction of new buildings, with the appropriation for each proposed building, separately stated; for maintenance and repairs on buildings and parks; for park and other permanent improvements with the appropriation for each, separately stated; for equipment and apparatus; for such other expenditures as may be necessary and authorized by statute or ordinance, but not herein enumerated."

Section 6 authorizes the board to make the levies. Section 7 permits the board to make the estimate when the municipality fails to make it. Section 8 permits the calling together of the excise board at any time. The provisions of that act have been carried forward into C. O. S. 1921, and practically without modification are now in existence as sections 9694, 9695, 9696, 9697, 9698, 9699, 9700, 9701, and 9702.

It thus appears that it is clear that the Legislature, by the Act of 1917, had specially conferred upon the excise boards, power to revise the budgets of chartered cities. Language could not be plainer. Section 539, R. L. 1910, referred to in the first section of the syllabus in the Bodine Case, is relied on as giving the legislative sanction for something to support the court's holding. Its history would indicate that it cannot help, as given by the codifier:

"History. L. 1907-8, p. 193; effective May 22, 1908. Revision: Minor changes in language. The possible unconstitutionality of this section by reason of conflict with sec. 3a, art. XVIII, Const., which provides that city charters be not in conflict with the Constitution and laws of the state, was considered to be best left to the courts."

From the digester's other notes under the section, it is clear that the majority have not run the question down. When one examines the body of the Bodine opinion, 79 Okla. 107, it is clear that the one who was writing the opinion overlooked the plain provisions contained in section 5 of the 1917 Act, then existing, which specially conferred upon the excise board the power to revise any estimate, and to strike out any item, but with no power to increase an item until advertisement; the act having been passed long after 1908, the date of the act undertaking to permit the framing of a charter to be approved by the executive, which

would supplant the enactments made by the legislative department.

The opinion in the present case emasculates the excise board, by making puppets out of them instead of administrative officers, clothed with discretionary duty, as about all that they are allowed to do under this decision is to do nothing, except levy whatever is desired by the city officers, and that function is not permitted unless the city officials so will. In other words, the court, by this decision, has put the town officials to a point where they can provide an entirely independent system for assessment, for levy, and for collection. In one breath the court, in the majority opinion, undertakes to say that its decision follows the Bodine Case, and the failure of the Legislature to act, and in the next breath, upon the proposition that the Legislature cannot act, if it wanted to, by reason of the constitutional inhibition. Sometimes we speak of reasoning in a circle, but, as applied to this case, it would more aptly be described as running in a circle, when one undertakes to apply the line of reasoning here announced with the positive provisions of the statutes and practices acquiesced in since 1924, and also later opinions of this court which the majority were not able to find, by reason of the narrow compass of the Bodine Case that has surrounded them.

An extract from the brief of Oklahoma City in the Bodine Case, is set out in the majority opinion, which extract, like the average politician, claims eevrything in sight both before and after the votes are counted. Naturally, a city growing like Oklahoma City was at that time, and seeking to expand, would want a complete system "for the assessment, levy, and collection of its taxes, without reference to the county excise board." The court, evidently following the suggestion contained in the brief of Oklahoma City, said that the only question that they could see was whether the county excise board had the power, under section 5, to revise and correct the budget, or estimate of the probable needs of the city for all necessary municipal purposes for the ensuing year, as prepared by the city.

Had the court looked, it would have seen in the statute itself that the Legislature had conferred that power in express terms. In order to deny the Legislature that power, it would have to find some provision in the Constitution forbidding. The last expression on the subject from the Legislature, at the time of that decision, was positive in terms

that the power was conferred, and there was no room for a play upon the proposition as to the former section 513, R. L. 1910, on the subject of substituting charter provisions for the general law. Had the Legislature never provided the excise board at all, it might be that the old act, that is found in 1910, on the subject of charter provisions taking the place of general law, might have come into question, but even then the question of the Legislature permitting a lot of independent promoters to make laws, supplanting what it had done, without any supervision of its own, would have resulted in a subversion of the principles of constitutional law, as required by the federal Constitution, and the terms of the Enabling Act, and the Constitution made pursuant thereto.

The majority opinion quotes from the case of City of Pawhuska v. Pawhuska Oil & Gas Co., decided in 1926, 118 Okla. 201, 248 P. 336, wherein the court announces that the sole purpose of the creation of the excise board appears to have been to provide a board, whose sole duties are to levy the necessary ad valorem taxes to meet the needs of the various subdivisions of the state, and to keep such levies within the limitations fixed by the Constitution and the various statutes relating to governmental affairs, followed by a statement that the court found nothing in the statutes from which it could be inferred that it was the intention of the Legislature to authorize the excise board to exercise any supervisory control over the expenditures of incorporated cities and towns, in the operation of public utilities owned exclusively by such municipalities.

A reference to the case shows that its conclusions concerning the purpose of creating the excise board is not borne out by its statement of the statutory provisions, recounted in the opinion, as follows:

"By section 9698, it is made the duty of the excise board to examine the financial statement for the previous fiscal year, as submitted, and ascertain its true fiscal condition at the close of the preceding year; to examine the statement of estimated needs for current expenses for the current fiscal year, as certified, and to determine the items and amounts for which appropriations should be made in detail as to each officer, board or department. It is given the power and authority to revise and correct any estimate by striking items therefrom, increasing or decreasing the items thereof, or adding items thereto, when in its opinion, the needs of the municipality shall require, with certain restrictions not necessary to be considered. When the excise board shall have examined, revised, and adjusted the items of the respective estimates and ascertained its separate items and the needs of each, if the same shall be within the limits for current expenses as provided by law, it is required to approve the items and appropriate the respective amounts for the purposes so found to be necessary. The appropriations made for the use of each separate office, board, commission or department, are required to be stated in separate items, and no appropriation shall be available for the use of more than one office, board, commission or department."

Here subdivision (b) of section 5 is set out, which is set out above in this dissent, and the court then continues:

"It will be observed that by subdivision (b), no provision is made for any item of the appropriation to be used in the operation of a public utility. The items specified are those deemed necessary for the current expenses of the municipality in the exercise of its governmental and legislative functions only."

To hit upon some chance expression found in some argument, with reference to some provision of some statute, and use that, instead of the plain provisions of the statute itself, cannot lead to harmony or clarification, and is not judicial construction. A better term for it might be "muddling."

To draw the argument that the Legislature in 1931, by changing the method of appointment of the excise board and making no change in the powers of the excise board, because it was aware of the decision of this court in the Bodine Case, thereby affirmed its correctness, is one of the most violent of presumptions. A person cognizant of the acts of the Legislature on the subject, could scarce have imagined that the results in the Bodine Case could have been reached, even though expediency of the highest type demanded. But when one examines subsequent opinions of this court, participated in by the judge who had been the cause of the Bodine decision, and by some members of the majority, it is hard to see why the majority of the present court did not have the candor to say that the doctrine in the Bodine Case had been so deeply buried that it was forgotten in 1931, instead of relying on a presumption of its being fresh in the mind of the Legislature, and the Legislature's failure to make changes in the language of the acts, in express terms providing for the revision at the hands of the excise board, and thereby finding evidence of legislative construction.

There is a habit in this court of judicial courtesy, but if the reports are true, this Bodine Case was in practical effect supplanted in its entirety by the court several years before 1931, aided by the judge whose decision was affirmed in the Bodine Case. There are three cases, if not more, of a good deal later vintage than the Bodine Case, that are squarely in conflict therewith.

One could not be true to himself if he should assert, after looking at these statutes, that the Legislature had not thereby undertaken to confer upon the excise board the powers they are seeking to exercise in this case. Presumption cannot be resorted to in the face of a reality. In the light of later court statements, the Bodine Case evidently was in worse shape than the body of Lazarus, as described in chapter 11 of the Gospel by St. John, after Gilbert, Co. Treas., v. Fisher, 108 Okla. 67, 230 P. 705, opinion filed in this court on September 9, 1924. The third section of the syllabus of that case, which appears to be sustained by the opinion written by Mr. Justice Gordon, is as follows:

"General taxes in this state must be assessed and collected pursuant to and under the authority of general laws enacted by the Legislature. City of Sapulpa v. Land, 101 Okla. 22, 228 P. 640. Such levy is not a matter of purely municipal concern."

That case, according to the statement, was a mandamus to compel the county treasurer and the assessor to cancel an excess tax levy of 3.7 mills, which had been placed on the tax rolls of Pottawatomie county, for the benefit of the city of Shawnee, Okla. It is very evident that this excess levy had been included by the city officers in the budget of Shawnee, as there was no authority in the excise board to increase the estimate under the law. The court gives a history of the case of Oklahoma News Co. v. Ryan, 101 Okla. 151, 224 P. 969, and at page 70 of 108 Okla., discusses the duty of the county treasurer and clerk, after the decision in the case of Oklahoma News Co. v. Ryan was handed down by this court on March 4, 1924. At page 71 of 108 Okla., the court, discussing the legality of the taxes complained of, says:

"It is next contended by plaintiffs in error that the city of Shawnee was authorized by its charter to levy for current expenses not to exceed ten mills, and they attempt to differentiate the charter of the city of Shawnee from the charter of Oklahoma City. They take the position that the levy of the tax for current expenses by the city upon the property of the inhabitants of the city is a matter of purely municipal concern. It is argued that in the case of Okla. News Co. v. Ryan, supra, the sole question under consideration was the charter of Oklahoma City, which charter provides:

"'* * * That the levy shall not exceed the limitation provided in the Constitution and laws of the state,'—while the charter of the city of Shawnee provides:

"'* * * That the city shall, through its officers, fix the rate of per cent. of levy not to exceed the constitutional limitation of ten mills.'

"The argument made by plaintiffs in error that the charter of the city adopted by the city under the sanction of Constitution and laws is supreme as to purely municipal matters, is entitled to great weight and is sustained by many authorities. If the matter of a levy of a general tax for city purposes is one of purely municipal concern, the charter of the city is supreme. But our court has decided this question adversely to the contention of plaintiffs in error. In the case of Okla. News Co. v. Ryan, supra, paragraph 9 of the syllabus is as follows:

"'Section 9692, Comp. Stat. 1921, limits the total levy for current expenses for each city in this state to six mills on the dollar, unless an additional levy is authorized by an election held as provided under sections 9707-9712, inclusive, and these provisions of the statute limit the levy which can be made in all cities in this state governed by charters or otherwise. Cities in this state received authority to make tax levies by virtue of general laws enacted by the Legislature, and not otherwise, and in the absence of legislative authority, the city has no power to assess and collect a tax at all. The general laws of this state granting to cities the power to levy taxes are found in sections 9692, 9699, 9707 to 9712, inclusive, and provisions of charters of cities do not supersede these general laws. The amount of tax authorized to be levied by a municipality and the manner of levying the same, is a matter of general public interest and can be accomplished only by general laws, and not by charter provisions.'

"And paragraph 10 of the syllabus is as follows:

"'The "current expenses" of cities of this state, which are limited to six mills by section 9692, Comp. Stat. 1921, include not only current recurring expenses of the city government, but include any expenditures for which a tax is authorized to be levied by the Legislature for any current fiscal year other than the taxes authorized by sections 10 and 27 of art. 10 of the Constitution and the annual installments on bond issues and judgments, and interest thereon.'

"In the body of the opinion, 101 Okla. 151, we find the following:

"'The Constitution confers no authority on a city to levy a tax, but the Legislature is authorized to confer this power. Section 9, art. 10, limits the amount of tax which may be authorized to be levied by the Legislature and section 20, art. 10, prohibits the Legislature from imposing any tax for city purposes, but authorizes the Legislature by general laws to confer on the city the power to assess and collect such taxes. In the absence of legislative authority, the city has no power to assess and collect a tax at all. Metropolis Theater v. City of Chicago, 228 U. S. 61; Edgerton v. Goldsboro Water Co. (N. C.) 35 S. E. 243; Metropolitan Ry. Co. v. St. Bd. of Tax Com'rs (N. Y.) 67 N. E. 69. The authority of Oklahoma City to levy a tax must be found in the general laws enacted by the Legislature. What, then, is the general law of this state granting to Oklahoma City the power to levy a tax? It is found in sections 9692, 9699, and 9797. Since the authority to make the levy for city purposes must be granted by general laws, and since no levy can be made unless made under authority of a legislative enactment, the statutes above referred to must be construed as general laws or no authority for the city levy exists. If these sections of the statute are construed as general laws, the charter of Oklahoma City does not supersede the same, as the charter in terms provides:

" '"That the levy shall not exceed the limitations provided by the Constitution and laws of the state."

"'The numerous authorities cited by the defendant are to the effect that the laws of the state as used in section 4508 of the statutes, mean the general laws of the state. That the statutes of the state providing for the assessment and collection of taxes are general laws, and not laws of purely municipal concern, was determined in the case of City of Sapulpa v. Land, 101 Okla. 22, 223 P. 640. We adhere to the views therein expressed and conclude that the amount of tax authorized to be levied by a municipality and the manner of levying the same is a matter of general public interest and can be accomplished only by general laws, and not by charter provisions.

"'The general laws of the state limit the levy for current expenses for cities to four mills, but with authority to make an additional levy, provided an election is held therefor. This general law can be superseded only by a general law enacted by the Legislature, and cannot be superseded by the provisions of a city charter. Sections 9707 to 9712, inclusive, which authorize an additional levy where authorized by an election for that purpose, do not simply provide a procedure for making a levy, but confer authority upon the various municipalities to make the increased levies and such additional levies can be made only by complying with these sections of the statute.'

"It is true that the charter of the city of Shawnee provides for the levy of a tax not in excess of the constitutional limit of ten mills, and by the terms of the charter there is no expressed submission to the laws of the state concerning taxation. But, under the decisions of our court, even an expressed provision in the charter, that a tax of ten mills might be levied, would not supersede the general law of the state on this subject. This question is now settled by the decisions above referred to. These decisions have been recognized by the Legislature of this state, which has passed an act intended to relieve any distress which might have arisen in the cities of the state over their financial matters by reason of a misapprehension of the law. It is clearly laid down in the case above referred to and in the case of the City of Sapulpa v. Land, 101 Okla. 22, 223 P. 640, that the levy of an ad valorem tax within the cities of the state is a matter of general concern, and not a purely municipal concern. In the last named case, on page 24, of 101 Okla., Mr. Justice Kennamer said:

"'It appears from an examination of the adjudicated cases by this court that this court has uniformly held that the provisions of a charter adopted pursuant to section 3 (a), article 18, Williams' Ann. Constitution, become the organic law of the municipality and supersede the laws of the state in conflict therewith, in so far as such general laws attempt to regulate purely municipal matters. Owen v. Tulsa, 27 Okla. 264, 111 P 320; Lackey v. State, 29 Okla. 255, 116 P. 913; State v. Linn, 49 Okla. 526, 153 P. 826; City of Collinsville v. Ward, 64 Okla. 30, 165 P. 1145.

"'A careful examination of these cases and the cases from other jurisdictions leaves the question as to what constitutes purely municipal matters or affairs a question difficult of determination, as there does not appear to be any well-established rule by which it may be determined as to just what affairs or matters are purely municipal. In considering the questions involved in this appeal, we deem it advisable to consider the pertinent constitutional provisions which must necessarily be considered in properly determining the same.'

"And on page 25 of 101 Okla.:

"'While it may be conceded that it was the intention of the framers of the Constitution by authorizing municipalities of over 2,000 inhabitants to adopt a charter to afford such inhabitants the fullest measure of local self-government consistent with the Constitution and laws of the state, yet it must be borne in mind that such municipalities, in exercising the power of taxation, become involved in a matter under our system

of government which is the proper subject of constitutional and general law. This, for the reason that the exercise of the arbitrary power of taxation is subject to the regulation of the supreme sovereign power, which in such case is the state. This is necessary in order that the tax system may be uniform, and afford all citizens equal protection of the law.'

"And on page 26 of 101 Okla.:

"'It is, therefore, our conclusion that taxes in this state must be assessed and collected pursuant to and under the authority of general laws enacted by the Legislature.'

"It is of vast importance to the whole state that this question remain settled. We adhere to the former opinion of this court upon this matter, and therefore hold that the statute fixing the levy for current expenses and not to exceed six mills is binding upon cities in this state, and supersedes any charter provision to the contrary. The judgment of the trial court is affirmed."

I regret the necessity of bringing forward again the exact language of the court to such a length as above, but it appears necessary so to do at this important juncture. By referring to the cases therein cited, it seems to cover the principles involved here, though "Bodine" is not mentioned, or perhaps "budget" is not called. Referring to the case of Oklahoma News Co. v. Ryan, 101 Okla. 151, 224 P. 969, the opinion was filed March 4, 1924, rehearing was denied March 25, 1924, The opinion was written by Mr. Justice Cochran. This case refers to City of Sapulpa v. Land, cited above, opinion written by Mr. Justice Kennamer, and concurred in by all the justices except Justice Lydick, who did not participate, and filed on the 29th day of January, 1924.

A still later case was decided by this court on the 14th of July, 1925, rehearing denied September 29, 1925, of Ryan, Co. Treas., v. Roach Drug Co., 113 Okla. 130, 239 P. 912. The opinion was written by Justice Lester. It was concurred in by Justices Nicholson, Mason, Phelps, Hunt, Clark, and Riley. Justice Harrison concurred in practically all of it except on the proposition of deduction from assets. This was a suit to recover taxes paid on protest. The body of the opinion contains a dissertation as to the difficulties and necessities of taxation. and it is very evident that some of the cases arose over the actions of city officials undertaking to justify under the Bodine Case At page 131 of 113 Okla., the budget question is discussed and the court says:

"* * * We cannot give approval to the language in the plaintiff in error's brief that 'because the defendant did not follow the provisions of the statute in regard to submitting its budget and estimate to the excise board, such failure was a mere technicality and no harm was thereby done.' While the Constitution and statutes of the state permit local self-government through its various municipalities, yet the state has not thereby surrendered its interest in its citizens to the extent that it will not protect them against the imposition of an illegal and unwarranted tax against their property.

"Article 18, sec. 3(a) of Williams' Constitution of Oklahoma, is in part as follows, relative to authority granted cities of the first class to form a charter:

"'Any city containing a population of more than two thousand inhabitants may frame a charter for its own government, consistent with and subject to the Constitution and laws of this state. * * *'

"'Consistent' means not contradictory, compliable, accordant. Therefore, by the provisions of the above section of the Constitution, it is provided that a charter may be adopted by a city which is not inconsistent with the Constitution and laws of the state.

"We conclude, therefore, that where the provisions of the charter of a city are in conflict with the general laws of the state the same are invalid. The Legislature has no constitutional authority to waive the general laws of the state except in matters of purely municipal concern which are in conflict with the provisions of a city charter. The constitutional provision is a clear inhibition against such delegation of power.

"The Legislature has never given to any municipality or city governed by a charter the right to compile or compute its budget and file the same with the county clerk and thereupon have the same spread upon the tax rolls for collection. The Legislature has required that the budget of each and every municipality be submitted to the excise board for review."

There is further discussion as to the power of taxation and what it is for, and it is held that the Bodine Case is not in point, and extracts are taken from City of Sapulpa v. Land and Oklahoma News Co. v. Ryan, cited above, and the summation of the matter is on page 134 of 113 Okla., as follows:

"The attempt of the city of Oklahoma City to prescribe and fix the duties of the county clerk and the county treasurer of Oklahoma county was without constitutional or legislative authority, and the city cannot substitute a system of its own in lieu of the system prescribed by the general laws of the state, and therefore the excise board of the county had exclusive jurisdiction to review the estimate submitted by the city for the

purpose of determining whether the items submitted were within the limitation fixed by the statute and such other purposes as prescribed by the general laws of the state."

The doctrine of this case is as squarely in opposition to the Bodine Case as the magnetic poles.

A later case, however, than this was a Commissioner's opinion, Jones, Co. Treas., v. Kennedy, 118 Okla. 224, 247 P. 53. This opinion was filed the 1st of June, 1926, and dealt with the city of Okmulgee. It was approved by the court, at that time consisting of Justices Nicholson, Branson, Harrison, Mason, Phelps, Lester, Hunt, Clark, and Riley. It dealt with the city of Okmulgee, and the language of the opinion is as follows:

"Section 1, article 7, of the charter of the city of Okmulgee, as amended at the legal election on April 11, 1921, was incorporated in the agreed statement of facts, and it is apparent that the principal, if not the sole, controversy in the trial court must have been whether the city charter controlled the state law' in the matter of the procedure to be followed in levying the tax in question.

"While this question may have been an open one at the time of the trial, it was subsequently settled adversely to the contention of the defendant in the case of Ryan, Co. Treas., v. Roach, supra, decided by the Supreme Court of Oklahoma on the 14th day of July, 1925."

Tested by these decisions, all of which are squarely to the proposition that the excise board can alter the budget, it is hard to see how the court can reconcile itself with what it has done heretofore. The tendency has been for several months, however, to break down acts of the Legislature on slight provocation. Of course, it would be commonplace to refer to the duty of this court in dealing with the action of a co-ordinate branch of the government. As well stated by Chief Justice Marshall, the function of the Legislature is to write the law, and of this court to declare it, and in declaring the law it should pay due regard to the rights of the other departments of government. Unless it can find that the action of the Legislature is necessarily forbidden by the terms of the Constitution, its enactments cannot rightfully be stricken down. Some of the cases put it "beyond a reasonable doubt."

As applied to the present act, it does not seem to me that there is any doubt of the power of the Legislature to provide for an excise board, with power to supervise these budgets. There is not an expressed prohibition in the Constitution. On the contrary,

there is the general grant of power to the Legislature, with a special provision that conferring power shall not work a limitation. As applied, however, to any effort of the Legislature to allow a local body to control the question of taxation, special provisions of the Constitution are that the Legislature can never surrender this power if it wanted to, and the Constitution itself, permitting the formation of charters by the inhabitants of cities, provides that it must be done in subordination to the general law, and the Legislature has spoken by the act of 1917, in language that cannot be misunderstood. The Constitution, in article 18 on the subject of charter formation, is specific, and provides that the charter must be ' consistent with and subject to the Constitution and laws of this state," and this court has so spoken.

With reference to legislative construction relied on by the majority, by reason of inaction, it is hard to see, in the light of these decisions, how any one could draw an inference that the Legislature, in providing for the new board, recognized that the Bodine Case was in force, in view of its positive declarations on the subject to the contrary, as construed in later decisions by this court and as contained in the statutes re-enacted.

It appears to me that this effort to revive the Bodine Case is very untimely and unfitting. The suggestion, however, has been made that, by the adoption of a statute, the Legislature adopts the construction that had been placed on it. That will fit in some cases, but will not help the majority opinion, as the construction that has been placed on this by the court has been to the contrary of the Bodine Case. Evidently, from the review' given in the cases cited above, as a result of the Bodine Case, chartered cities assumed the airs of independent sovereigns till the Gilbert Case, and from that time acquiesced in the doctrine that the Legislature had the right of regulation, and until now it had occurred to nobody that the doctrine of the Bodine Case would ever be appealed to as the foundation of an opinion, in effect, destroying the excise board, when its services are so much needed.

I regret very much the necessity of quoting at length from the decisions, as I have done, and setting out statutory terms, but duty requires that a review of such be had, in view of the importance of the matter.

I much deplore a controversy between different departments of government, and be-

lieve this court should permit the Legislature to function. I fear, in the light of experience, that this protest will by the majority of my associates be treated as though it were merely the voice of one crying in a wilderness, perhaps to be cast aside unheeded, as being just that much more added to printing expense. It occurs to me, however, that perhaps the old time query, "Watchman, what of the night? Watchman, what of the night?" as found in the 20th Chapter of Isaiah, calls for an answer, at a time when the Egyptian darkness of depression can be felt.